17   167
s17  176

CASEY, RESPONDENT, v. ANDERSON ET AL., APPEL-
LANTS.

[Submitted September 30, 1895.  Decided November 25, 1895.]

ADVERSE POSSESSION—*Continuity of holding—Ejectment.*—Where the United States ob-
tained a judgment cancelling a patent to land because of the patentees' fraud, the
land being then held adversely by the defendants, and which judgment was after-
wards set aside, the temporary revestiture of the title in the government by the judg-
ment of cancellation, was not as against the patentees' successors, an interruption of
the statute of limitations so as to break the continuity of the defendants' adverse pos-
session; their possession having been uninterrupted while the judgment was in
force.

*Appeal from Second Judicial District, Silver Bow County.*

EJECTMENT.  Judgment was rendered for the plaintiff be-
low by McHATTON, J.  Reversed.

Statement of the case by the justice delivering the opinion.

This is an action in ejectment.  The plaintiff claims title by
virtue of a United States patent issued to his grantors on Jan-
uary 31, 1883, for the Hesperus lode claim.  The action was
commenced October 7, 1892.  Upon the trial the plaintiff in-
troduced in evidence the patent from the United States includ-
ing the premises, and mesne conveyance from the patentees to
himself, and a judgment rendered December 29, 1887, in the
case of the United States against the patentees of the Hesperus
lode claim, which judgment set aside and canceled the Hes-
perus patent upon the ground of fraud and misrepresentations in
obtaining the same.  Plaintiff also introduced the notice of in-
tention to move for a new trial in that case, and the order
granting the same June 5, 1888.

The defendants offered to prove facts constituting an ad-
verse possession, said adverse possession being for a time
longer than the period of the statute of limitations as to real
estate, and commencing after the issuance of the patent to
plaintiff's grantors.  The court excluded this testimony as to
adverse possession.  The ground of exclusion was this:  That,

up to the time of the setting aside of the Hesperus patent, to wit, December 29, 1887, the adverse possession by the defendants had not been long enough to constitute a bar, and that, by setting aside said patent, the Hesperus title revested in the United States, and that, by granting a new trial in the case of the United States against the Hesperus patentees, the said title had again vested in the patentees, and that the time since this revestiture was not sufficient to fulfill the requirements of the statute of limitations. In other words, the court held that the time while the judgment of the United States against the Hesperus patentees was standing upon the records of the district court was an interruption of the statute, and that the defendants in this case could not claim the continuous adverse possession, crossing the period when the judgment above mentioned remained undisturbed by granting a new trial in that case.

*Ella L. Knowles* and *H. J. Haskell*, for Appellants.

Occasional interruptions of possession which do not impair the uses to which the occupants subject the property will not defeat the presumption of a grant. (*Fuller* v. *Fletcher*, 44 Fed. R. 34, 1890.) The effect of evidence of continuous possession as a basis of a claim of title is not diminished by proof of occasional interruptions in the actual occupancy of the premises, nor by the fact that at times they were occupied by persons not shown distinctly to claim under any of the parties in claimant's chain of title. (*Rayner* v. *Lee*, 20 Mich. 386, 387; *Chandler* v. *Lunsford*, 4 Dev. &. Bat. 407; *Cowles* v. *Hall*, 90 N. Car. 333, 334; *Melvin* v. *Waddell*, N. C. 75, 265; *Davis* v. *McArthur*, 78 N. C. 359.) The plaintiff has not proved or offered any evidence to prove an actual entry of himself or of the United States upon the land in question, without which the continuity of adverse possession could not be broken. A judgment for plaintiff in ejectment without possession taken under it, will not stop the running of the statute of limitations, and the fact that the defendant dismisses his appeal from the judgment does not amount to an abandonment

of all claim to adverse possession. (*Malary* v. *Dollarhide*, 98 Mo. 198, 11 S. W. 611.) A judgment in ejectment does not create a new estate or vest a new title in the plaintiff so as to interrupt the running of the statute of limitations, where it has begun to run. An actual entry is necessary to stop the running of the statute. (*Carpenter* v. *Natoma W. & M. Co.*, 63 Cal. 616; *Doe & Kennedy* v. *Reynolds*, 27 Ala. 377; *Jackson* v. *Haviland*, 13 John. 228; *Moore* v. *Greene*, 19 How., 71 U. S.) Respondent claims that the running of the statute of limitations in this case was interrupted as a matter of law between the 29th day of December, 1887, the date on which the decree was rendered in the case of *United States* v. *King and Ducie* setting aside the patent embracing the lands in controversy herein, and the 6th day of January, 1888, the day on which the defendants in said suit duly served and filed their notice of intention to move for a new trial. Even though the title to the land in controversy reverted absolutely to the government of the United States during the seven days between the setting aside of the patent and the filing of the notice of intention to move for a new trial, such reversion does not and could not interrupt the running of the statute of limitations as against the appellants herein, who offered to prove that for more than five years preceding the commencement of this action they at all times held certain portions of said lands described in their separate answers adversely to the said King and Ducie, and plaintiff, their grantee. "Although possession be held in subordination to the title of the United States, it may be adverse to one claiming the land, as against the possessor." (*Moore* v. *Brownfield*, 7 Wash. 26; *Page* v. *Fowler*, 28 Cal. 610, affirmed in *Page* v. *Fowler*, 37 Cal. 105; *McManus* v. *O'Sullivan*, 48 Cal. 15; *Lord* v. *Sawyer*, 57 Cal. 65; *Pioneer Wood Pulp Co.* v. *Chandos*, 47 N. W. 662; *Langlois* v *Crawford*, 59 Mo. 468, 473; *Peting* v. *DeLore*, 71 Mo. 13; *Jatunn* v. *Smith*, 95 Cal. 155; *Steele* v. *Boley*, 6 Utah 313; *Walden* v. *Heirs of Gratz*, 1 Wheat. 292, 557; *Northern Pacific Ry. Co.* v. *Kranich*, 52 Fed. Rep. 911; *Hayes* v. *Martin*, 45 Cal. 563; *Francœur* v. *Newhouse*, 43

Fed. Rep. 241.). If a motion for a new trial is duly filed, the judgment does not become final until such ·motion is determined and execution cannot· issue until final judgment in a federal court. (*Danielson* v. *Northwestern Fuel Co.*, 55 Fed. 49; Slaughterhouse cases, 10 Wall. 289; *Woods* v. *Lindvall*, 48 Fed. 74; *Doyle* v. *Wisconsin*, 95 U. S. 52; *Rutherford* v. *Insurance Co.*, ·1 Fed. 458; *Railway Co.* v. *Murphy*, 11 U. S. 489; *Brocket* v. *Brocket*, 1 How. 238; *Memphis* v. *Brown*, 94 U. S. 716–717; *United States* v. *Pacheco*, 20 How. 263; *United States* ·v. *Schooner Peggy*, 1 Cranch. 359; *Louisville Rock· & Lime Co.* v. *Kerr*, 78 Ky. 13.)

. *F. T. McBride*, for Respondent.

It is well settled that any adverse possession to be of any avail must be a continuous possession for the full statutory period and if the continuity is broken at any time short of the statutory period, the period of the running of the statute is begun anew and the possession prior to the interruption counts for nothing. It makes no difference by whom or in what manner the continuity is broken, so only it is broken. The statute protects only such adverse possession as has been continuous in fact both as to time and interest. (Sedgewick on Trial of Title to Lands, § 740; *San ·Francisco* v. *Fulda*, 37 Cal. 353; *Peabody* v. *Hewitt*, 83 Am. D.. 491, 493, 498; *Robinson* v. *Brown*, 15 S. W. Rep. 585; *Robinson* v. *Brown*, 14 S. W. Rep. 1056; *Dunn* v. *Noble*, 75 Mo. 260; *Perkins* v. *Blood*, 36 Vt. 273; *Bird* v. *Rollins*, 30 Cal. 408; *Runnell* v. *Ewing*, 38 Ala. 44; *Haynes* v. *Boardman*, 119 Mass. 414; ·*Gower* v. *Quinter*, 40 Mich. 572; ·*City of· San Jose* v. *Trimble*, 41 Cal. 543; *Freemont* v. *Seals*, 18 Cal. 434; *Armstrong* v. *Morrell*, 14 Wall. 144; *U. S.* v. *Nashville Ry. Co.*, 118 U. S. 126.) The statute of limitation does not run against the government, and for that reason the statute of limitations does not run against the. grantee. of the government as to any portion· of the public domain until the complete legal. title has ·passed from the government. (*Gibson* v. *Choteau*, 13 Wal. 93; *Redfield*

v. *Parks,* 132 U. S. 239; *Steele* v. *Boley,* 24 Pac. 755; *Anzar* v. *Miller,* 90 Cal. 342; *King* v. *Thomas,* 6 Mont. 409; *Mayer* v. *Carothers,* 14 Mont. 274.) Upon the principle that the statute of limitations does not run against the government, it follows that if the government acquires the legal title to land within the period necessary to give effect to the statute, such acquiring of title has the effect of breaking the continuity of adverse possession and prevents the operation of the statute bar. (*Armstrong* v. *Morrell,* 14 Wal. 120, 144; Sedgewick on Trial of Title to Lands, §§ 738, 740.)

De Witt, J.—Were it not for the alleged interruption of the running of the statute of limitations, the time which defendants offered to prove that there had been an adverse possession would have been ample to bar the plaintiff's recovery. The question now before us is whether the plaintiff can take advantage of his alleged interruption of the statute of limitations.

In the case of *Armstrong* v. *Morrill,* 14 Wall. 120, the title of plaintiff was forfeited for the nonpayment of taxes, by an act of the legislative assembly of the state of Virginia. Some nine years afterwards, he, or his predecessors, were allowed, by a private act of the legislature, to redeem the lands. from said forfeiture. It was held by the majority of the supreme court of the United States that this forfeiture to the state broke the continuity of the adverse possession of defendant and that such adverse possession, having been thus broken, was neither restored upon the redemption, so as to be continuous in law, nor was it so affected that the persons holding adversely could tack the adverse possession prior to the forfeiture to the adverse possession subsequent to the redemption, and so make out a term of adverse possession which the statute required in order to give title.

Without analyzing the decision of the court in that case, as applied to the facts herein, we are of opinion that the facts now before us come within the law as declared in the dissenting opinion filed in that case by Mr. Justice Strong, with

whom concurred Messrs. Justices Davis and Bradley. The facts here differ from those in *Armstrong* v. *Morrill.* In that case the title had become absolutely forfeited, and had unquestionably and completely reverted to the state of Virginia. It was wholly out of the plaintiff's predecessors, and they obtained title again, many years afterwards, by virtue of a private act of the legislature allowing them to redeem. The court held that the limitation must commence to run from the time of acquiring this new title.

But in the case at bar the alleged interruption of plaintiff's title was by a judgment by the United States against his predecessors, which was subject to review by motion for new trial and appeal. The motion for new trial was made within the statutory time, and within eight days after the judgment, and granted within a few months. This seems to us to be a different state of facts than the absolute and unqualified forfeiture found in *Armstrong* v. *Morrill.* But, even with the facts in that case, the dissenting opinion held as follows :

" Concede that the plaintiff's right of entry was suspended by the forfeiture, still it revived when the lands were redeemed, and if the defendants' possession was adverse to his right, and continuous during 14 years in which he might have entered or asserted his right by action, I am unable to perceive why he is not barred. The fact that an owner's right of entry has been suspended, after the statute has commenced running against him, can be of no importance, if he has had the statutory period within which to bring his action against the disseisor in adverse possession. If this is not so, then war might not only suspend the running of the statute, but render of no effect all adverse possession held before the war commenced. This has never been asserted. It is the uninterrupted, adverse possession alone which creates the bar. It is not essential to it that the right to enter or to bring suit should have suffered no interruption. Every reason for applying the statute which would have existed had there been no forfeiture, and consequently no suspension of the plaintiff's right to enter, exists in full force now. Statutes of limitation are dictated,

mainly, by two considerations :  One, that it is public policy to discourage stale claims; and the other, that it is not to be presumed that one having a right would delay asserting it for a long period in full view of another's wrongful interference with it.  Hence, the period was fixed at 14 years, in Virginia and West Virginia, within which a party out of possession may bring his action of ejectment against one in possession holding adversely.  Assuming that the jury would have found the facts as stated in the points proposed, the plaintiff has had that entire period; and the public policy, as well as the presumptions arising from his laches, which gave birth to the statute, apply in all their potency to his case.  And the statute is not only a bar to the assertion of a right of entry upon one in adverse possession after the expiration of the period fixed, but it gives a title to the disseisor.  The law casts title upon him, and assures to him the privilege of asserting it, either aggressively or defensively.  For the acquisition of this right the defendants have done all that the law contemplates.  They entered under a claim of exclusive right,—that is adversarily,— and they held that adversary possession continuously until this suit was brought.  That the Gallatin title was forfeited during their occupancy was no fault of theirs.  It was due to the wrongful neglect of the plaintiff, or those under whom he claims, to enter the lands upon the commissioners' books, and to pay the taxes. Can he now make use of a forfeiture, caused by his own neglect, to obtain or preserve rights which, confessedly would have no existence but for his neglect?  Yet this was, in substance, the instruction given to the jury.  His laches, resulting in a forfeiture, is to have the same effect as an entry would have had, or as action brought.  Thus he is allowed to secure an advantage through his own default.  Thus he is allowed to make use of his own unlawful nonfeasance to break the continuity of the defendants' hostile possession.  I cannot assent to such a view of the law.''

We will pause here for a moment to remark that the question now before us is not as to when the statute begins to run. It has long been adjudged in this court,—although the writer

of this opinion, with whom is Mr. Justice Hunt, agrees to such adjudication only on the ground of *stare decisis* (*Mayer* v. *Carothers*, 14 Mont. 274; *Clark* v. *Bernard*, 15 Mont. 176)— that the statute of limitations commences to run against a mining claim only upon the issuance of a United States patent therefor. That question is not here involved. It can be conceded that the statute commenced to run when the Hesperus patent was issued in 1881.

The question now is whether the plaintiff can take advantage of the alleged interruption in the running of the statute caused by the judgment of the United States against the Hesperus patentees. And in this connection the reasoning of the dissenting opinion above quoted from *Armstrong* v. *Morrill* is in point. As remarked in that opinion, so it is true here, that the adverse possession of the defendants, as offered to be proved, was wholly uninterrupted. *Their* acts were continuous. *Their* possession was continuous. The only interruption was what plaintiff claims was an interruption in *his* title. He claims that the title was divested from his predecessors for a few months or days, and then revested. But may he rely upon that fact? Justice Strong said, "That the Gallatin title was forfeited during defendants' occupancy was no fault of theirs." So here, that the Hesperus title was adjudged a fraud for a time during defendants' occupancy was no fault of theirs. Paraphrasing the language of Judge Strong to meet the facts in this case, we may say: "The interruption of the Hesperus title was due to the plaintiff alone. He, or, rather, his predecessors, were charged with fraud against the United States in obtaining the patent. They were adjudged guilty of such fraud. Can they now make use of this judgment of fraud against them to obtain or preserve rights which, confessedly, would have no existence but for this judgment of fraud? The judgment in the United States against the Hesperus patentees declaring the patent fraudulent, would, from plaintiff's point of view, have the same effect as would an entry made or an action brought by him or his predecessors. Thus he is allowed to secure an advantage

through his own fault.    Thus he is allowed to make use of a judgment declaring his predecessors guilty of a fraud to break the continuity of defendants' hostile possession.''          ·

The case seems to resolve itself into this dilemma: The Hesperus patentees were adjudged guilty of fraud in obtaining the patent.    This judgment, of course, was afterwards set aside. But plaintiff, as their successor, seeks to take advantage of this judgment of fraud against his predecessors to now take himself out of the statute of limitations.    The other horn of the dilemma is:    If that judgment of fraud was incorrect (as, perhaps, it may be said to have been by reason of its having been set aside), then the full period of the statute has run.

We are of opinion that the plaintiff cannot take advantage of that judgment against his predecessors, declaring them guilty of fraud, in order to obtain an advantage which he confessedly would not have but for such judgment.

While it is perfectly true that the statute of limitations does not run against the government, and that this question has been settled for centuries, still it is also true that this is a matter to be taken advantage of by the United States, and not by private parties where only private rights are involved.    In this case the statute of limitations was not running against the United States, but was running against the title, claims, or pretensions of this plaintiff and his predecessors only.    It was running against the claim, whatever it may have been, of the plaintiff and his predecessors for these premises.

It was held in *U. S.* v. *Beebe,* 127 U. S. 338, 8 Sup. Ct. 1083:    ''The United States are not bound by any statute of limitations, nor barred by laches of their officers in a suit brought by them, as sovereign, to enforce a public right, or to assert a public interest; but where they are formal parties to the suit, and the real remedy sought in their name is the enforcement of a private right for the benefit of a private party, and no interest of the United States is involved, a court of equity will not be restrained from administering the equities between the real parties by any exemption of the government, designed for the protection of the rights of the United

States alone." See, also, *Curtner* v. *U. S.*, 149 U. S. 662, 13 Sup. Ct. 985, 1041.

We are of opinion that plaintiff cannot avail himself in this action of what he claimed to be an interruption of the running of the statute of limitations in favor of the defendants. The testimony offered by the defendants should have been allowed. There are some other questions raised on the appeal, which, in view of our decision upon the proposition above discussed, do not seem necessary to decide.

The judgment is reversed, and a new trial is ordered.

*Reversed.*

HUNT, J., concurs. PEMBERTON, C. J., did not sit in the case.

[Submitted September 30, 1895. Decided November 25, 1895.]