NEWTON, APPELLANT, *v.* WEILER, RESPONDENT.

(No. 6,556.)

(Submitted January 24, 1930. Decided March 21, 1930.)

[286 Pac. 133.]

*Mr. George W. Pierson,* for Appellant, submitted a brief and argued the cause orally.

*Messrs Johnston, Coleman & Jameson,* for Respondent, submitted a brief; *Mr. W. M. Johnston* argued the cause orally.

ON MOTION FOR REHEARING.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal by plaintiff from a judgment entered in a suit to quiet title in two irrigating ditches.

Plaintiff is the surviving wife of Jasper A. Newton. In 1892 Jasper A. Newton settled upon the east half of section 16, township 4 south, range 23 east, now situated in Carbon county, and at the same time his brother, W. E. Newton, settled upon the west half of the same section. The land was then owned by the state of Montana. Ditches and water rights on the south half of the section only are involved here. W. E. Newton obtained patent from the state of Montana to the southwest quarter in December, 1904.

In November, 1897, J. A. Newton leased the southeast quarter of the section from the state, and in November, 1902, entered into a contract for its purchase, and thereafter, and in December, 1909, obtained patent from the state, which issued to plaintiff. Defendant is now the owner of the southwest quarter of the section.

The only evidence in the record showing that W. E. Newton, or anyone other than the state of Montana, had any possessory right in the southwest quarter prior to 1904, was the testimony of plaintiff, who said that, from what she had heard, W. E. Newton leased the southwest quarter from the state at about the time her husband leased the southeast quarter.

Both quarter-sections are irrigated with waters diverted from Rocky Fork Creek, through what is now the new First Chance Ditch Company's canal. The general slope of the land is from west to east. The ditches here involved will be

hereafter designated as the north ditch and the center or waste ditch.

The complaint describes the location of the north ditch as originating at the corporation canal at a point marked by a cement division box, situated 50 rods west of the northwest corner of the southwest quarter of section 16; thence running and extending easterly to a point 350 feet, more or less, east of the northwest corner of the southwest quarter of section 16; thence south 175 feet, more or less; thence in a southeasterly direction to a cement box situated on the east side of the pasture of defendant; thence in an easterly direction paralleling the north line fence of defendant to a certain flume owned by plaintiff near the west line of her land, and 289 feet south of the northeast corner of the southwest quarter of the section. It shows that, save for 50 rods of said ditch located in section 17 (not in question here), the remainder of it is located in the southwest quarter of section 16, owned by defendant. The plaintiff alleges that she and her predecessors in interest have occupied and used the ditch continuously and adversely since May, 1893. The portion of this ditch from the cement box on the east of the pasture was plowed in by defendant in the fall of 1926.

At the time of filing the complaint in this action, an order to show cause was issued requiring defendant to show cause why he should not be restrained from molesting plaintiff in reopening and using the north ditch which had been plowed in by defendant.

A hearing was had on June 9 and 10, 1927, and a temporary injunction issued, based upon testimony introduced and a view of the premises, restraining defendant from interfering with plaintiff's use of the ditch. Thereafter, and on June 23, 1927, a further order was entered by the court reciting that defendant's counsel had informed the court that defendant would construct a ditch across his farm somewhere between the north boundary of his farm and the place where the plowed ditch was located, which ditch would parallel the north line of his

farm to a point about 30 rods west of the northeast corner of his farm, thence southeasterly to a point 289 feet south of the northeast corner of defendant's farm,—the same point of termination of the plowed ditch. The court thereupon ordered that, if the ditch be constructed by defendant as announced by his counsel, then the prior restraining order was to be held in abeyance, with a provision that, if the ditch was not constructed before a specified time, the original order was to become effective. The defendant by answer alleged that he had constructed the new ditch in conformity with the court's order.

By decree, after trial on the merits, the court ordered that the north ditch must be maintained at the location established by the court as above described, and found that plaintiff is the owner of an undivided four-sevenths and the defendant of an undivided three-sevenths interest in the ditch.

1. By several assignments of error plaintiff contends that the court erred in refusing to find that plaintiff is the owner of an undivided four-sevenths interest in the north ditch as described in her complaint, and in not quieting title thereto in plaintiff and by substituting in lieu thereof the ditch constructed at the place and in conformity with the court's order.

The record discloses that neither plaintiff nor her predecessor in interest ever acquired an easement on the lands of defendant by conveyance. She contends that she has acquired an easement by prescription and also by virtue of section 2339, Revised Statutes of the United States (43 U. S. C. A., sec. 661). While it has been held that claims of right under these theories are incompatible (*Lowry* v. *Carrier*, 55 Mont. 392, 177 Pac. 756), we will consider the merits of both contentions.

There is evidence that J. A. Newton and W. E. Newton constructed the north ditch in 1893. Since the title of the southwest quarter of section 16, on which the ditches in question were constructed, was in the state of Montana until December, 1904, and since W. E. Newton had no possessory right therein until about 1897, it becomes necessary to deter-

mine whether title by adverse possession, or a right by prescription, may be acquired against the state with respect to its school lands.

Our statutes of limitations, generally speaking, have application to the state. Thus section 9012, Revised Codes of 1921, provides: "The state will not sue any person for or in respect to any real property, or the issues or profits thereof, by reason of the right or title of the state to the same, unless: 1. Such right or title shall have accrued within ten years before any action or other proceeding for the same is commenced; or, 2. The state, or those from whom it claims, shall have received the rents and profits of such real property, or of some part thereof, within the space of ten years." And section 9043 provides: "The limitations prescribed in this chapter apply to actions brought in the name of the state, or for the benefit of the state, in the same manner as to actions by private parties."

Counsel for plaintiff contends that by section 1880 of the Civil Code of 1895, as interpreted in the case of *Smith* v. *Denniff*, 24 Mont. 20, 81 Am. St. Rep. 408, 50 L. R. A. 737, 60 Pac. 398, the right is conferred to make an appropriation of water on unsold state lands. Granting that appropriations of water may be made on state lands, that right of itself does not carry with it the right to acquire a right of way for a ditch by prescription. The precise question here presented was not involved in that case, and it appears not to have been heretofore passed upon by this court. Here the land in controversy is a part of the land granted to the state of Montana by Act of Congress approved February 22, 1889 (25 Stat. 676), commonly known as the Enabling Act, for the support of common schools.

By sections 10 and 11 of the Enabling Act it is provided that sections 16 and 36 of every township in the state are granted to the state, and that they "shall be disposed of only at public sale, and at a price not less than ten dollars per acre, the proceeds to constitute a permanent school fund,

the interest of which only shall be expended in the support of said schools."

By section 7 of Ordinance No. 1, appended to the state Constitution, the state accepted the several grants made by the United States to the state of Montana, mentioned in the Enabling Act, "upon the terms and conditions therein provided." The state of Montana, also, by the Constitution, covenanted that such lands "shall be held in trust for the people, to be disposed of as hereafter provided, for the respective purposes for which they have been or may be granted, donated or devised; and none of such land, nor any estate or interest therein, shall ever be disposed of except in pursuance of general laws providing for such disposition, nor unless the full market value of the estate or interest disposed of, to be ascertained in such manner as may be provided by law, be paid or safely secured to the state; nor shall any lands which the state holds by grant from the United States (in any case in which the manner of disposal and minimum price are so prescribed) be disposed of, except in the manner and for at least the price prescribed in the grant thereof, without the consent of the United States." (Sec. 1, Art. XVII, Constitution of Montana.)

The Constitution also provides that the school fund derived from the proceeds of such granted lands (sec. 2. Art. XI) "shall forever remain inviolate, guaranteed by the state against loss or diversion" (sec. 3, Art. XI) "and sacred to the purpose for which they were dedicated" (sec. 12, Art. XI).

These constitutional provisions are limitations upon the power of disposal by the legislature. (*In re Beck's Estate*, 44 Mont. 561, 121 Pac. 784.)

A right of way for a ditch is an easement, and constitutes an interest in real property. (*Mannix* v. *Powell County*, 60 Mont. 510, 199 Pac. 914.) If our statutes of limitations respecting the state were construed as authorizing the right of one to obtain title to, or any estate or interest in, any part of the school lands of the state by adverse possession, it

would readily appear that they would impinge upon the terms of the grant from the United States and conflict with section 1, Article XVII, of our Constitution. We are of the opinion, however, that it was not the intention of the legislature to thwart the plain purpose of our Constitution by attempting to make the statutes of limitations applicable against the state in respect to school lands granted to it by the United States. and that no title thereto, or interest therein, may be acquired by adverse possession. The same result under similar circumstances has been announced by the supreme courts of the states of Utah, Washington and Minnesota, in the following cases: *Van Wagoner* v. *Whitmore,* 58 Utah, 418, 199 Pac. 670; *O'Brien* v. *Wilson,* 51 Wash. 52, 97 Pac. 1115; *State of Washington* v. *City of Seattle,* 57 Wash. 602, 27 L. R. A. (n. s.) 1188, 107 Pac. 827; *Murtaugh* v. *Chicago, M. & St. P. Ry. Co.,* 102 Minn. 52, 120 Am. St. Rep. 609, 112 N. W. 860. This court for the same reason has held that no interest in such lands may be acquired by condemnation proceedings. (*State ex rel. Galen* v. *District Court,* 42 Mont. 105, 112 Pac. 706.)

It is likewise contended that the question whether the statute of limitations has run against the state is one that may be raised by the state but not by private parties. The case of *Casey* v. *Anderson,* 17 Mont. 167, 42 Pac. 761, is relied upon to support the contention. In that case the question was not involved as to when the statute begins to run, but rather whether the running of the statute had been interrupted. We do not regard that case as controlling here.

In this case the Newton brothers had no rights in the property in question prior to 1897 when they leased it from the state. Prior to that time they had no rights which could have been protected by court action. The rule is that the statute of limitations relating to adverse possession does not run against a party until he is in a position to protect his title by action. (*Northern Pac. Ry. Co.* v. *Smith,* 62 Mont. 108, 203 Pac. 503; *Chessman* v. *Hale,* 31 Mont. 577, 3 Ann. Cas. 1038, 68 L. R. A. 410, 79 Pac. 254.) Since the state did

not surrender the right of possession of the land until the leases of 1897, it is immaterial what was done with the land prior to that time so far as acquiring rights by adverse possession is concerned. (*Northern Pac. Ry. Co.* v. *Cash,* 67 Mont. 585, 216 Pac. 782; see, also, 2 C. J. 216 et seq.) While ▇ rights by adverse possession may be initiated by trespass against the holder of the legal title (*Morrison* v. *Linn,* 50 Mont. 396, 147 Pac. 166), it does not follow that one trespasser may initiate such rights against another trespasser.

Assuming that the right by prescription started to run against W. E. Newton at the time he obtained a lease from the state—a question not necessary for decision here—then it follows that the time within which the plaintiff or her husband, J. A. Newton, could have acquired any right to the southwest quarter of section 16 by prescription would not commence to run prior to 1897, the supposed time of the lease. The parties concede that plaintiff has the right to maintain a ditch across the southwest quarter of section 16 as a tenant in common with defendant, and there is no controversy respecting their relative rights therein. The only question in controversy, so far as the point here under consideration is concerned, is with respect to its location.

The court found that the north ditch has been changed at will by the defendant and his predecessors in interest. There is evidence in the record that in 1906 and 1907, and again in 1914 and 1915, the ditch was situated where it is now and where the court ordered that it be maintained, and that at other times its location was changed by defendant. The evidence on this point is conflicting.

The evidence warrants the conclusion that the exact location ▇ of the ditch was indefinite and undefined, except as to its termini, and under such circumstances a court of equity may give it a definite location. (*Burnham* v. *Mahoney,* 222 Mass. 524, 111 N. E. 396; *Alabama Corn Mills Co.* v. *Mobile Docks Co.,* 200 Ala. 126, 75 South. 574.) Such a course is particularly warranted here, where the water is admittedly delivered

to plaintiff at the exact point where she claims it always has been delivered, and where no showing is made that any prejudice will result by reason of the change in its location, and where the court was warranted in finding that there has been no right by prescription for the statutory period over a definite route since 1897.

As above stated, the evidence respecting the location of █ the ditch since 1897 is conflicting, but we cannot say that it clearly preponderates against the finding of the trial court. And in treating the question we bear in mind the rule that, where the evidence is conflicting, allowance will be made for the more advantageous position occupied by the trial judge in passing upon the credibilty of the witnesses (*Dahlberg* v. *Lannen*, 84 Mont. 68, 274 Pac. 151). And every legitimate inference must be drawn from the evidence in favor of the correctness of the judgment. (*Tucker* v. *Missoula Light & Ry. Co.*, 77 Mont. 91, 250 Pac. 11.)

It is contended by plaintiff that the pleadings and proof █ warrant a finding that plaintiff became entitled to the north ditch at the location of its construction in 1893 as of that date. It is said that this result follows from the Act of Congress of 1866 (sec. 2339, Rev. Stats. U. S., tit. 43, U. S. C. A., sec. 661), which provides: "Whenever, by priority of possession, rights to the use of water for mining, agricultural, manufacturing, or other purposes, have vested and accrued, and the same are recognized and acknowledged by the local customs, laws, and the decisions of courts, the possessors and owners of such vested right shall be maintained and protected in the same; and the right of way for the construction of ditches and canals for the purposes herein specified is acknowledged and confirmed; but whenever any person, in the construction of any ditch or canal, injures or damages the possession of any settler on the public domain, the party committing such injury or damage shall be liable to the party injured for such injury or damage."

Here the plaintiff claims no right prior to 1893. Subsequent to the enactment of section 2339 (43 U. S. C. A., sec. 661), supra, and prior to the attempted initiation of any right by plaintiff, Congress granted the lands in question to the state of Montana for the support of common schools, subject to the restrictions and limitations upon the power of disposal above mentioned. We think section 2339 has no application to a situation where rights are attempted to be asserted on lands after they have been granted by Congress, as here. But ▇▇▇▇ counsel for plaintiff contends that this section of the federal statute controls here when read in connection with division 5, section 1240, of the Compiled Statutes of Montana of 1887, which provided: "When any person or persons, corporation or company, owning or holding land as provided in section 1239 of this chapter, shall have no available water facilities upon the same, or whenever it may be necessary to raise the waters of said stream or creek to a sufficient height to so irrigate said land, or whenever such lands are too far removed from said stream or creek to so use the waters thereof as aforesaid, such person or persons, corporation or company, shall have the right of way through and over any tract or piece of land for the purposes of conducting and conveying said water by means of ditches, dykes, flumes, or canals, for the purpose aforesaid."

Because of the Revised Statutes of the United States, section 1844 (48 U. S. C. A., sec. 1455), and section 1850, plaintiff contends that section 1240 was to all intents and purposes approved by Congress and made applicable to school lands granted by Congress to the state, particularly in view of Article XX of the Montana Constitution. We think this contention is untenable. The constitutional provisions relating to the disposition of school lands are special provisions dealing with that subject. In construing statutes, where general and special provisions are repugnant, the latter control over the former. (*State ex rel. Daly* v. *Dryburgh*, 62 Mont. 36, 203 Pac. 508; *Walden* v. *Bitter Root Irr. Dist.*, 68 Mont. 281, 217

Pac. 646; *Stadler* v. *City of Helena*, 46 Mont. 128, 127 Pac. 454.) This is also true of constitutional provisions. (12 C. J. 709, sec. 57.)

Section 1 of Article XX of the Constitution also recognizes only such laws then existing as are "not inconsistent with this Constitution or the Constitution or laws of the United States of America." Section 1240, supra, if applied to the state school lands would conflict with section 1 of Article XVII of the Constitution. We hold that it has no application to such lands as were granted to this state by Congress for the support of schools.

The court did not err in refusing to strike from the answer the allegations relative to the present location of the ditch or in ordering that it be maintained in its present location.

2. The court imposed upon plaintiff the obligation to pay four-sevenths of the cost of installing cement drops in the ditch in question, and error is assigned in so doing. We think plaintiff's contention in this respect must be sustained. No issue involving the necessity of maintaining cement drops was presented by the pleadings in the case. Allegations in the answer relative thereto were, on motion of plaintiff, stricken therefrom and thus the question was eliminated from the case so far as the instant action is concerned. The parties are tenants in common of the ditch. (*Crowder* v. *McDonnell*, 21 Mont. 367, 54 Pac. 43.) And each is bound to keep the ditch in repair and is entitled to contribution from the other for his or her share of the expense thereof (3 Kinney on Irrigation, 2d ed., p. 2622), but whether cement drops are reasonably necessary in the proper maintenance of the ditch is not involved here.

3. Concerning the center or waste ditch, which plaintiff alleged was plowed in in 1927, the court found that it was constructed by E. L. Grewell and W. E. Newton in 1896 and that plaintiff and her predecessor in interest did not use it with the knowledge of the owner of defendant's land until

1918; that the use was without consideration to the owner of the land and was by consent of the defendant; that the owner of the land did not object to the use of the ditch by plaintiff and her predecessor in interest until 1926; that whatever use plaintiff and her husband made of the ditch prior to 1918 was without the knowledge of the owner; that plaintiff or her husband never asserted any right to the ditch until 1926; and that plaintiff was a licensee as to any use of the ditch, which license was terminated in 1926. There is evidence on behalf of plaintiff that this ditch was constructed in 1893 or 1894, but what we have heretofore said with reference to the acquisition of an easement in the north ditch also applies to the center or waste ditch. The evidence is sharply conflicting relative to the use of this ditch by plaintiff and her predecessor in interest, but it does not preponderate against the findings of the trial court.

On behalf of plaintiff, witnesses testified that J. A. Newton used the ditch since 1893, and that it carried not only the waste waters from the southeast quarter of section 17 and the southwest quarter of section 16, but also waters diverted from a joint ditch of the Newton brothers by means of a ditch running north along the highway at the southwest corner of the Weiler land and connecting with the waste ditch. There was evidence also, on behalf of plaintiff, that work was done by J. A. Newton in cleaning the waste or center ditch.

The evidence on behalf of defendant was to the effect that E. L. Grewell and W. E. Newton constructed the center ditch in 1896 to carry the waste waters from their respective lands, and that J. A. Newton had nothing to do with its construction; that the ditch running north on the southwest corner of the Weiler land did not connect with the waste ditch until 1918, and that the defendant and his predecessors in interest had no knowledge that J. A. Newton or any of his employees used water through this ditch or did any work on it or claimed any interest in it before 1918.

This court, in *Collins* v. *Thode*, 54 Mont. 405, 170 Pac. 940, 941, in considering the rule of acquiring property by adverse possession, quoted with approval from 2 C. J. 75, the following: "In order to make good a claim of title by adverse holding, the true owner must have actual knowledge of the hostile claim, or the possession must be so open, visible, and notorious as to raise the presumption of notice to the world that the right of the true owner is invaded intentionally, and with a purpose to assert a claim of title adversely to his, or so patent that the owner could not be deceived, and such that if he remains in ignorance it is his own fault. 'The claimant must exercise such acts of ownership and occupancy as are sufficient to "hoist his flag" over the lands, so that all may observe it.' A clandestine entry or possession will not set the statute in motion, and mere declarations as to title in himself by the claimant, where the possession is not visible or actual, amount to nothing. The owner will not be condemned to lose his land because he has failed to sue for its recovery, when he had no notice that it was held or claimed adversely."

When it is remembered that this ditch collects the waste waters from the defendant's lands and the lands lying immediately west and conveys it to plaintiff's land, it is apparent that plaintiff may have used the waters without knowledge or notice on the part of defendant and his predecessors in interest. There is evidence justifying the implied finding that the use of the ditch by plaintiff and J. A. Newton was not open, visible, continuous and adverse within the rule announced in the case of *Glantz* v. *Gabel*, 66 Mont. 134, 212 Pac. 858, and cases of like import, and we do not feel warranted in disturbing the conclusion of the trial court.

4. It appears that the waste or center ditch, as constructed by defendant and as it existed at the time of the trial, runs straight east and west on the center line dividing the south half of section 16. Formerly the west end of the ditch commenced a short distance south of the center line dividing the south half of the section, and the east end terminated a short

distance north of such center line. As formerly constructed, the ditch, when it reached the east line of the Weiler tract, extended north either along the line between the two places or in plaintiff's field to the northeast corner of the Weiler quarter, thence east through plaintiff's lands to the Clark Fork River. As it is now constructed, the waste ditch before it reaches the east boundary of the Weiler tract, turns north in his land and extends parallel to and within a few feet of plaintiff's west boundary line until it reaches the northeast corner of the Weiler tract, thence east in the same ditch as heretofore to the Clark Fork.

Plaintiff contends that, since she appropriated the waste waters collected by the center ditch at the point where it formerly reached her land and applied them to a beneficial use, defendant is without right in interfering therewith, and that she is entitled to the continued use thereof and to have such waters available to her as they existed prior to 1926.

Waste waters may be appropriated in this state. (Sec. 7093, ▉ Rev. Codes 1921; *Popham* v. *Holloron*, 84 Mont. 442, 275 Pac. 1099.) Here it is shown that plaintiff made a valid appropriation of the waste waters flowing to her land from the land of defendant. Defendant, as the proprietor of his land, has the right to use his land as he pleases, and has the right to change the flow of the waste waters thereon in the reasonable enjoyment of his own property, subject to the limitation embraced in the maxim, " '*Sic. utere tuo ut alienum non laedas*,' or as is said in some of the cases, the use must be without malice or negligence." (*Ryan* v. *Quinlan*, 45 Mont. 521, 124 Pac. 512, 516.)

Defendant testified that, as now constructed, the level of the water at the east end of the waste ditch on his land is six or seven inches lower than formerly, and that it is below the high ground formerly irrigated by plaintiff. He said his purpose in making the change was to eliminate the waste land in his field by enabling him to drill straight rows of corn, beans and the like. According to his testimony, it is practical

to run the waste water from the present waste ditch to the high point on plaintiff's land, but this would require a dam in the present ditch, the use of which would result in damage to defendant if plaintiff endeavored to take 100 inches of water. He further stated that a dam was necessary to put water on the plaintiff's land as the ditch was formerly constructed.

Defendant may not maliciously or arbitrarily change the flow of the waste waters to the injury or detriment of plaintiff in the enjoyment of the appropriation made by her, particularly where, as here, some of the waste waters come from lands not belonging to defendant. We are unable to determine from the record whether defendant acted maliciously or arbitrarily in turning such waste water north in his own field and depriving plaintiff of its use. Upon the case being remanded, further evidence may be taken to enable the court to make a finding on this issue. If it is practicable for plaintiff to capture the waste waters at the point where they were formerly received by her without substantial damage to defendant, she should be given the right to do so.

Other assignments of error were made by plaintiff, but we find no merit in them, save and except that we believe the court should restrain defendant from interfering with plaintiff's right to use the north ditch in the place it is now located.

The cause is remanded to the district court of Carbon county for further proceedings not inconsistent with this opinion; each party to pay his or her own costs on appeal. The petition for rehearing is denied. This opinion is substituted for the former one, which is hereby withdrawn.

Mr. Chief Justice Callaway and Associate Justices Matthews, Galen and Ford concur.