O'HARE, Respondent, *v.* JOHNSON et al., Appellants.
(No. 8415.)
(Submitted September 25, 1944.   Decided December 6, 1944.)
[153 Pac. (2d) 888.]

(410)

Mr. *J. D. Taylor,* for Appellants, submitted a brief and argued the cause orally.

*Messrs. O'Hara, Madeen & MacDonald,* and *Messrs. Toole & Boone,* for Respondent, submitted a brief; *Mr. Robert A. O'Hara* argued the cause orally.

MR. JUSTICE ADAIR delivered the opinion of the court.

Plaintiff Ed. O'Hare and defendant Gustave T. Johnson own adjoining farms in the Bitter Root Valley in Ravalli county. The Johnson land lies southeast of the O'Hare land with an east and west county road between. The general slope of the country is from southeast to northwest with the O'Hare land lying lower than the Johnson land.

O'Hare's land comprises 160 acres which he purchased in 1934. The two west forties then consisted of very poor, wet, undrained alkalied waste land where only alkali grass and salt grass grew, and, extending from the south to the north was a depression or slough which was completely covered with cattails, moss and watercress. Upon taking possession of the farm in the spring of 1935, O'Hare constructed a drain ditch through the west forties and he filled and leveled off the slough and reclaimed and cultivated the land, making it highly productive.

Defendant Gustave Johnson purchased his farm in 1939. It was irrigated by water conducted from the Bitter Root river by means of a large man-made canal formed by the combining of two ditches known as the Surprise and the Supply ditches which run in a northeasterly direction along the easterly or upper side of the Johnson land. Mr. Johnson's water right calls for 280 inches out of these ditches. To the west of the Surprise and Supply ditches, and running parallel therewith, are two other canals known respectively as the Union and the Aetna and sometimes called the twin ditches. These conduct water from the Bitter Root river and cross the Johnson farm in a northeasterly direction.

The main part of the Johnson farm lies above and to the east of the twin ditches but there is a tract comprising about 66 acres which lies to the west of such ditches. At and prior to the time Mr. Johnson acquired the land, only about four acres of the last-mentioned tract were irrigated but in 1941 defendants decided to drain the tract and to apply irrigation to wash down the soil and clear the land for cultivation. Accordingly, along the west line of said tract, defendant constructed an experimental drain ditch about 3 feet wide, 20 inches deep and half a

mile long running northerly from a point near where the Aetna ditch intersects the west line of the land to the northwest corner of the Johnson farm, the northerly terminus being at the southerly side of the county road known as Spooner Lane.

The 40-acre tract which adjoins the Johnson land on the west and the county road on the south is owned by Herbert Garnett. A swale or depression, marking what remains of an old channel of Birch Creek, runs in a northerly direction through the Garnett forty and, at a point about 400 feet west of the northwest corner of the Johnson farm, it crosses the county road and enters the south line of the O'Hare farm, continuing until it connects with the south terminus of the O'Hare drain ditch above mentioned. With the development of irrigation and the construction of numerous canals and ditches leading from the Bitter Root river which intersect the old channel and with the various changes wrought by the construction of the Northern Pacific Railway's roadbed and right of way, the old channel of Birch Creek became greatly altered and at places it became completely abandoned and obliterated by being filled in, leveled off and farmed by the upper land owners with holdings lying south of the Garnett land.

The experimental drain ditch along the west line of the Johnson land conducts the waste water from said land northerly to the northwest corner of the Johnson farm from which point the water, following the natural slope of the land, flows westerly along the south side of the county road for a distance of 400 feet where it enters the old channel of Birch Creek and thence flows northerly beneath a bridge which spans the old channel at the county road and from whence it flows upon the O'Hare land.

The experimental drain ditch demonstrated that the 66 acre tract could be drained in the above manner and Mr. Johnson arranged for a man with a power shovel to construct a drain ditch following the course of the experimental ditch and, from the northern terminus thereof to construct a second ditch running 400 feet westerly paralleling the north boundary of the

Garnett forty. This ditch was to receive all the waste water from the entire drainage system at a point about 50 feet south of the south line of the O'Hare farm and where it would flow northerly upon and over the O'Hare farm and fill his drain ditch with much more water than it could possibly carry.

By means of a flume across the Union and Aetna ditches, Mr. Johnson conducts his 280 inches of water out of the Surprise and Supply ditches for use in irrigating his westerly 66 acre tract. To rid his own land of this large quantity of foreign water conducted from the Bitter Root river, Mr. Johnson requires the aforesaid drain ditches which, if constructed, would carry and discharge such waste water upon the farm of Mr. O'Hare. The evidence shows that it would be both possible and feasible for Mr. Johnson to conduct his waste water across the old channel of Birch Creek and thence westerly to a ditch now in use along the east side of the Northern Pacific Railway right of way, thus entirely avoiding the O'Hare farm.

The plaintiff commenced this action to restrain the defendant owner Gustave T. Johnson and his manager and brother, Oscar Johnson, from constructing the proposed drainage ditch until they shall have provided an outlet for same other than upon the O'Hare farm.

A trial was had and the court made written findings of fact and conclusions pursuant to which a decree was entered for plaintiff, enjoining defendants from collecting irrigation or drainage water on their lands and discharging same where they would flow onto the lands of the plaintiff. From such decree the defendants have appealed.

Defendants attack the sufficiency of the complaint. They assign error in the overruling of their general demurrer to the complaint and in overruling their objection to the introduction of evidence. The complaint describes the respective tracts owned by plaintiff and defendants and then alleges:

"III. That the general slope of these lands are to the northward, and the lands of the defendants above named are seeped and their use until the present date, has been as a pasture

and that no irrigation has been practiced thereon. That the defendants are now engaged in constructing a drainage ditch along the west line of the above described lands, by which it is intended to drain the same, and in order to produce crops thereon, it will be necessary, and the defendants intend to irrigate said lands, and spread thereon water from a foreign source to-wit: from a ditch conveying water from the Bitter Root River, and this ditch will be used to carry and convey the waste water from such irrigation to a point north of the north line of defendants' lands above described, and that no outlet is provided for such water at such point, and that said water will flow onto the lands of plaintiff to his damage.

"That unless the defendants be restrained and enjoined from so doing they will construct said proposed ditch and will leave the waters conveyed thereby no outlet except to flow westward into a ditch on plaintiff's land, and will cause it to overflow its banks and spread out over the adjoining lands of plaintiff, and will raise the water table of plaintiff's said land and will permnently reduce, if not totally destroy the productivity of about 60 acres of plaintiff's land. That said damage is a continuing one and cannot be estimated in damages, and is not readily ascertainable, and will permanently injure the soil of plaintiff's land.

"IV. That plaintiff has no plain, speedy or adequate remedy at law."

The prayer is for an injunction. The complaint states a cause of action and the trial court properly overruled the demurrer and defendants' objection to the introduction of evidence. (*Boulevard Drainage System* v. *Gordon,* 91 Or. 240, 177 Pac. 956, 178 Pac. 796; *Kall* v. *Carruthers,* 59 Cal. App. 555, 211 Pac. 43; *Olney Springs Drainage Dist.* v. *Auckland,* 82 Colo. 510, 267 Pac. 605; *Stroup* v. *Frank A. Hubbell Co.,* 27 N. M. 35, 192 Pac. 519, 32 A. L. R. 450; *Mallett* v. *Taylor,* 78 Or. 208, 209, 152 Pac. 873.)

The defendants assign error in the refusal of the trial court to adopt defendants' proposed findings of fact numbered III

to IX, inclusive, and their proposed conclusions numbered I, II and III but we find such assignments without merit.

Defendants also contend that it was error for the trial court ■ to make its findings of fact Nos. IV, VI, IX, X, XI, XII, and XIII but we find that each of these findings is supported by substantial evidence and we may not therefore disturb them. The evidence shows and the trial court correctly found:

"XI. That probably forty or fifty or more years ago there existed an old slough or channel, first from Willow Creek near Corvallis, down through these agricultural lands, till it joined what is called the Birch Creek slough or channel, such Birch Creek being nothing more than a gully or depression coming down the hill, apparently carrying off flood water. This combined depression or slough is first intercepted by the Surprise Ditch, but it later appears meandering in a northerly direction from where it came out of the mountains some three miles south of the plaintiff's land, and it seems in such long ago the surface and flood waters in that region might well have drained into such slough or channel. But the Birch Creek channel has been obliterated, and in such three mile distance the entire depression has been leveled off and farmed over by the three or four large farms in that vicinity, and at a point between the Wood Lane and the Dennis Road the remains of such old channel is intercepted by both the Union and the Aetna Ditches which at this point run parrallel, but a few rods apart, both being very large ditches; and that near such point of interception is found the Wood Ditch, which crosses and recrosses such old depression, flowing in a northerly direction, taking care of drainage as well as irrigation in its vicinity, the obliteration of such ditch through these farms being complete, it being impossible to locate it, or even the old depression, and this condition continues beyond the plaintiff's lands to the Bitter Root River, all with the exception of the distance across the Garnett forty acre tract lying immediately south of the plaintiff's lands and west of the defendants' lands. Through this forty the depression is clearly shown. * * * It is a low spot, or swale, thirty or more feet across, and nowhere

through its entire course as it winds around through such forty acres is there found anything like a cut-out channel. It is a slough, with slough grass, and on May 22nd of this year, following a rather normal snowfall in the winter and unusually heavy rains for a month then past, there was no running water whatever in the slough, and the old grass and old growth fallen to the ground for many years past did not show any such disturbance as would be caused by running water. It seems to be a dead depression or slough, not serving any water-carrying purpose.

"XII. That the irrigation water which the defendants intend to use on their lands is from the Supply Ditch, a large irrigation ditch, being the combined Surprise and Supply ditches, both taking their water from the Bitter Root River some miles above this point, so that any water which the defendants may use to irrigate and which would drain off onto the plaintiff's lands, is water from the Bitter Root River which could never reach that region, point nor place except by being conveyed through these large irrigation ditches from such river. And from the testimony it appears that the defendants could and would use up to such 280 inches of water for the irrigation of that 66 acres of their lands, not continuously, but at certain periods, and if so, this would cause a drainage into their proposed system of somewhere half or more of such volume of water.

"XIII. That the proposals and intention of the defendants, as set forth in their pleadings and in the evidence, to irrigate their lands from the Supply Ditch, collect their drainage and discharge the same at the point mentioned, near the south line of plaintiff's land, would make some 60 acres of the plaintiff's lands unproductive, would make swampy land of the region that he uses for feed lot purposes, * * * making such location entirely valueless for the purpose of a feed lot, and in all would result in great and irreparable damage to the plaintiff."

Defendants assert that the court erred in making its conclusions of law numbered II, III and IV but we find no merit in such assignments. The conclusions of law made by the court are:

418

"I. That the plaintiff has no plain, speedy or adequate remedy at law.

"II. That the plaintiff is entitled to a permanent injunction, permanently enjoining and restraining the defendants, and each of them, and their servants, agents and employes from collecting irrigation or drainage waters on their land described in the pleadings, in a drainage ditch which will discharge such waters at any point where the same will thereafter flow onto the plaintiff's lands, and particularly at a point contemplated by them where such waters would flow under the bridge on the Spooner Lane and into the drain ditch of the plaintiff or over his lands at such or any other point.

"III. It is not intended herein to authorize an injunction to prevent the defendants from irrigating and draining their lands, provided that the defendants shall so dispose of their drainage water so that the same will not be discharged upon the lands of the plaintiff or into the plaintiff's drain ditch. The defendants seem to know of a method of doing this, entirely feasible and at a very slight additional cost, and which would not in any way injure the plaintiff.

"IV. That the plaintiff is entitled to judgment for his taxable costs expended in this action."

To reclaim a tract of their own land, defendants propose to lay waste and ruin a like acreage of land already reclaimed and belonging to plaintiff. It is not reasonable nor is it necessary for defendants, in ridding their lands of waste waters, to cast same upon plaintiff's farm. It is both possible and feasible for defendants to dispose of all waste waters without discharging any thereof upon the O'Hare farm. All they need do is to conduct such waters westerly to a large drainage and irrigation ditch now in use along the east side of the Northern Pacific Railway right of way situate on the west line of the Garnett tract. "The law does not countenance the principle that one tract of land may be reclaimed at the expense of the destruction of another without compensation." (*Calvert* v. *Anderson,* 73 Mont. 551, 236 Pac. 847, 849.)

The statute requires that, ''One must so use his own rights as not to infringe upon the rights of another.'' (Sec. 8743, Rev. Codes.) The law is as stated in *Newton* v. *Weiler,* 87 Mont. 164, 179, 286 Pac. 133, 139: ''Defendant, as the proprietor of his land, has the right to use his land as he pleases, and has the right to change the flow of the waste waters thereon in the reasonable enjoyment of his own property, subject to the limitation embraced in the maxim, ' ''*sic utere tuo ut alienum non laedas,*'' or as is said in some of the cases, the use must be without malice or negligence.' (*Ryan* v. *Quinlan,* 45 Mont. 521, 124 Pac. 512, 516).''

We find no error and the decree is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON and ANDERSON concur.

MR. JUSTICE MORRIS concurs in the result.