No. 87-62

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

THE STATE OF MONTANA, ACTING BY AND
THROUGH THE DEPARTMETN OF HIGHWAYS OF
THE STATE OF MONTANA,

                Plaintiffs and Respondents,

-vs-

THOMAS M. FEENAN and ROBERT G. FEENAN, as
tenants in common, JANE DOE FEENAN, as wife
of THOMAS M. FEENAN; JANE ROE FEENAN, as wife
of ROBERT G. FEENAN,

                Defendants and Appellants.


APPEAL FROM:  The District Court of the Eleventh Judicial District,
              In and for the County of Flathead,
              The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           McGarvey, Heberling, Sullivan & McGarvey; Allan M.
           McGarvey argued, Kalispell, Montana

      For Respondent:

           W. D. Hutchison argued, Dept. of Highways, Helena,
           Montana


                        Submitted:  October 27, 1987

                        Decided:  March 25, 1988

Filed:

*Ethel M. Harrison*

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.


This action arose from a condemnation of appellants' property which adjoins U.S Highway 40 which is now U.S. Highway 2 near Columbia Falls, Montana. The Feenans appeal from the judgment of the District Court, Eleventh Judicial District, Flathead County. Judgment was entered after a seven day trial in which the jury awarded appellants $16,500 for 2.04 acres of land as "damages for property taken." The jury awarded Feenans nothing for "damages or depreciation in the market value of the remaining property."

We reverse and remand for retrial.

The issue presented for our review in this appeal is whether the District Court properly instructed the jury as to the application of the common enemy doctrine to the State of Montana as condemnor.

The Feenans own property on both sides of U.S. Highway 2. In 1981, 2.04 acres of a 240 acre tract were condemned in order to expand the road from two to four lanes. The 240 acre tract was being used for agricultural purposes on the date of taking, but had been appraised as suitable for residential use with commercial potential. The Feenans claim that flooding caused by the construction of the new highway has rendered the remainder of their property which borders on the new highway unsuitable for commercial use. They wish to recover damages for these lands. Most facts in this case, as to the cause, effect and extent of flooding, are disputed by the parties.

The Feenan property is located approximately ½ mile west of Trumbull Creek where the creek crosses the highway. On the north side of the highway there was a barrow pit which bordered the Feenan property. In May, 1979, Trumbull Creek

flooded in a 50 year magnitude flood. The floodwaters exceeded the carrying capacity of the barrow pit, causing considerable flooding on the Feenan property north of the highway. South of the highway, the creek had been artificially channeled. The southern creek bed had become constricted with the growth of vegetation over the years. Each party furnished expert testimony by hydraulic engineers. The experts testified that the flow of water in Trumbull Creek south of the highway was and is insufficient to carry the estimated 50 year floodwaters either before or after construction of the new highway. The Feenan property south of the highway was not affected by the 1979 floodwaters.

At the time of the 1979 flood, the State cut through the old highway to the land south of the highway, diverting the floodwaters north of the highway to the land south of the highway. These cuts were later replaced by culverts which the Feenans allege substantially reduced the potential flooding of the Feenans' property north of the highway, while still not affecting their southern land.

In constructing the new, expanded highway in 1984, new culverts were put in new locations under the road. Also one large culvert was replaced, rerouting an old culvert which bent at a right angle under the highway with a larger, straight one. The new culvert empties directly into the southern channel of Trumbull Creek, allegedly causing erosion to the creek's western bank and increasing the danger of flooding on the Feenan property south of the highway. The barrow pit on the northern edge of the old highway was replaced by a shallow ditch, allegedly increasing the chances that future floodwaters will extend further north on the Feenans' northern property. However, the State's expert testified that the new culvert would adequately carry the 50

year floodwaters from the north side of the highway to the south side, eliminating flooding on the northern side.

Trumbull Creek has not flooded the property in question since the four lane highway was constructed, but the Feenans contends that the value of their commercially valuable land has depreciated due to construction of U.S. Highway 2 and the consequential future flooding of their property. The Feenans allege that they are entitled to damages for their property's devaluation.

Appellants do not argue with the condemnation amount of $16,500 awarded to them by the jury. They contend that they are also entitled to compensatory damages for the depreciated value of their property caused by flooding which was exacerbated and altered by the construction of U.S. Highway 2. They argue that the doctrine of "common enemy" and "reasonable construction," which are applicable to neighboring private landowners, cannot be used to limit liability of a state agency from its constitutional duty to pay just compensation for property taken or damaged in the exercise of its power of eminent domain. Art. II, § 29, 1972 Montana Constitution.

The common enemy doctrine provides that a landowner is not liable for vagrant surface waters which cross his land and go onto his neighbor's land. That water is the common enemy of both landowners. Roop v. Anaconda (1972), 159 Mont. 28, 494 P.2d 922. In diverting such waters, the landowner is limited to reasonable care in avoiding damage to adjoining property. O'Hare v. Johnson (1944), 116 Mont. 410, 153 P.2d 888.

The land in question was appraised by appellants' expert as worth $6,600 to $7,500 per acre before flooding. After taking, due to flooding restrictions, the appraiser estimated the land to be worth only $2,000 per acre.

- 4 -

Appellants specifically argue that two jury instructions offered, but not given by the court deprived them of presenting their contentions and possible jury argument on the instructions. See Tacke v. Vermeer Manufacturing Co. (Mont. 1986), 713 P.2d 527, 43 St.Rep. 123.

Instruction D-25 was offered by the Feenans for the purpose of instructing the jury as to a landowner's duty to their neighbors when constructing ditches or altering the flow of vagrant surface waters to alleviate flooding caused by highway reconstruction. D-25 read:

> An uphill landowner owes no duty to his downhill neighbor to prevent the encroachment of surface waters from his property onto his neighbor's. However, a landowner who actively diverts waters must act reasonably in consideration of the foreseeability of injury to the neighbor's property and the amount of injury thereto. The law does not countenance the principal that one tract of land may be reclaimed at the expense of the destruction of another without just compensation.

The court read all but the last sentence of this instruction to the jury. Appellants contend that by removing the last sentence of this instruction, the court erroneously instructed the jury that _any_ landowner, including a condemning agency, could take any reasonable measures to divert floodwaters without paying just compensation.

The court then refused to read the Feenans' proposed instruction no. D-28, on the basis that D-25 covered the Feenans' contentions relating to the flooding issue.

The Feenans' proposed instruction no. D-28 read:

> You are instructed that if reconstruction by Plaintiff has caused a condition which has or will produce intermittent but inevitable recurring flooding, then Defendants should be justly compensated by said Plaintiffs, or Plaintiff for the depreciation if any, to the fair market value of Defendants' property resulting therefrom.

Appellants allege that due to these erroneous omissions in the instructions presented to the jury, the jury ignored the loss in fair market value of the Feenans' property upon a finding that the State's highway construction and divergence of the floodwater was reasonable. We agree with appellants' argument.

Art. II, § 29 of the Montana Constitution states:

Private property shall not be taken or damaged for public use without just compensation to the full extent of the loss having been first made to or paid into court for the owner.. . .

This clause of our Constitution distinguishes land sales from condemnation proceedings. It distinguishes a sale between private landowners from a "taking" between a condemning agency and a private landowner.

The leading Montana case which comes closest to addressing the issue at hand is State Highway Commission v. Biastoch Meats, Inc. (1965), 145 Mont. 261, 400 P.2d 274. In Biastoch, the State condemned private property around a meat packing plant to build a highway. The resulting construction eliminated a drainage channel, completely blocking the natural flow of a creek. The new channel was diked causing a flood basin that inundated the packing plant. This Court held that the State acted unreasonably in this instance and the Biastocks were awarded compensation not only for the condemned land but also for the value of their business.

The State contends that language in Biastoch extends the application of the common enemy doctrine to condemning agencies. We disagree. The relevant language in Biastoch cites O'Hare v. Johnson (1945), 116 Mont. 410, 153 P.2d 888. O'Hare cites language which allows a landowners to change the flow of water on his property as long as it is not done with "malice or negligence." Newton v. Weiler (1930), 87 Mont. 164, 286 P. 133. We do not see how malice or negligence is

- 6 -

relevant in this context, but hold as accurate as a matter of law the premise that "[t]he law does not countenance the principle that one tract of land may be reclaimed at the expense of the destruction of another without compensation" (Cite omitted.) O'Hare, 116 Mont. at 418, 153 P.2d at 891. Although the Feenans' land is not being destroyed by the construction of the highway, there is evidence that periodic flooding reduced its value. The State, as a condemning agency, is held to a standard of paying just compensation for land when the diversion of vagrant surface waters causes damage to private lands.

Jury instructions given by the District Court did not adequately state the applicable law in this case. Instruction no. D-25 was so confusing that it should not have been given. Instruction no. D-28 should have been given. We hold that failure to give no. D-28 was reversible error.

Reversed and remanded for a new trial.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

- 7 -

Mr. Chief Justice J. A. Turnage, dissenting:

Today the majority chooses to ignore the record, relevant Montana precedent and a jury's finding following a seven-day trial. In doing so, the majority reverses the jury's finding based on the District Court's handling of two jury instructions. The objectionable instructions merely serve the majority as a conduit to rule on this issue as it pleases. Accordingly, I dissent.

A review of the record reveals that, sometime prior to 1979, Trumbull Creek was relocated from its natural banks to its present location. Trumbull Creek's present man-made channel is not sufficient to contain the Creek during a "50 year flood." Such a flood occurred in 1979. Trumbull Creek's carrying capacity is further hampered by excessive vegetation growth along its banks. Experts for both sides agree that Trumbull Creek's carrying capacity is limited to 90 to 120 cfs. In 1979, the spring runoff, estimated at 330 cfs., was much greater than Trumbull Creek's carrying capacity, causing the creek to flood.

Unfortunately for appellant State of Montana, Highway 40 runs through the above-mentioned flood plain. The State responded to the 1979 flood, during highway reconstruction in 1984, by placing four culverts under Highway 40 and by replacing Trumbull Creek's passage under the highway with a larger culvert. The State's action caused Trumbull Creek and its flood waters to pass under the roadway. At trial the State argued that its action was not the cause of the flooding; rather, it was the proper and reasonable action in response to the flooding. The jury agreed that the State acted reasonably. See O'Hare v. Johnson (1944), 116 Mont. 410, 419, 153 P.2d 888, 891.

Appellants argue that the "common enemy doctrine" and "reasonable construction," which are applicable to

8

neighboring private landowners, cannot be used to limit liability of the state from its constitutional duty to pay just compensation for property taken or damaged through eminent domain. The majority, without so stating, apparently agrees with appellants' contention.

The majority's position should fail for the following reason. In its opinion the majority states: "In diverting such waters, the landowner is limited to reasonable care in avoiding damage to adjoining property. O'Hare v. Johnson (1944), 116 Mont. 410, 153 P.2d 888." The majority then distinguishes State Highway Commission v. Biastoch Meats, Inc. (1965), 145 Mont. 261, 270, 400 P.2d 274, 278-279, which holds that the common enemy doctrine allows a condemning agency to change the flow of water on his property as long as it is not done with "malice or negligence." The majority conveniently ignores that Biastoch is based on O'Hare.

Next, the majority holds the District Court erred when it amended jury instruction D-25 to the point that D-25 "was so confusing that it should not have been given."

Instruction D-25, as amended, provides:

> An uphill landowner owes no duty to his downhill neighbor to prevent the encroachment of surface waters from the property onto his neighbor's. However, a landowner who actively diverts waters must act reasonably in consideration of the foreseeability of injury to the neighbor's property and the amount of injury thereto.

Appellants did not object when the District Court gave amended Instruction D-25. After reading D-25, it is my opinion that the majority is overreaching to find reversible error.

The majority also objects to the District Court's refusal to give jury instruction D-28. Instruction D-28,

9

offered by appellants without citation of authority, provides:

> You are instructed that if reconstruction by Plaintiff has caused a condition which has or will produce intermittent but inevitable recurring flooding, then Defendants should be justly compensated by said Plaintiffs, or Plaintiff for the depreciation if any, to the fair market value of Defendants' property resulting therefrom.

Instruction D-28 was more properly stated by Instructions D-3 and D-4, which provide:

> [Instruction D-3.] The Constitution of the State of Montana provides that private property shall not be taken or damaged for public use without just compensation to the full extent of the loss being paid to the owners.
>
> [Instruction D-4.] You are instructed that you should award the defendant as just compensation:
>
> 1. the correct fair market value of the property actually taken; and,
>
> 2. if the property actually taken is part of a larger parcel, the depreciation in current fair market value, if any, which will accrue to the portion not taken by reason of its severance from the portion taken by the construction of the highway in the manner proposed by plaintiff.

Instruction D-3 instructed the jury that respondent is liable for private property taken without just compensation. Instruction D-4 instructed the jury that just compensation includes fair market value and land value depreciation. Instructions D-3 and D-4 properly instructed the jury based on the Biastoch-O'Hare rule and Article II, Section 29, 1972 Mont. Const.

10

In summary, it is my opinion that the majority has sought to ignore Montana precedent that the common enemy doctrine applies to condemning agencies. The issue at hand is now being sent back to the District Court to speculate what damages appellants might incur when the next "50 year flood" brings its runoff.

I must disagree with the majority's decision to ignore the record, relevant Montana precedent and the jury's finding.

_____
Chief Justice

Mr. Justice L. C. Gulbrandson:

I concur in the foregoing dissent of Mr. Chief Justice Turnage.

_____
Justice