FILED

11/28/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0509

DA 22-0509

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 228

ROBERT WINKOWITSCH,

     Plaintiff and Appellee,

  v.

GLACIER ELECTRIC COOPERATIVE, INC.,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DV-18-37
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Maxon R. Davis, Davis, Hatley, Haffeman & Tighe, P.C., Great Falls, Montana

    For Appellee:

    Kevin H. Ness, Johnson, Berg & Saxby, PLLP, Kalispell, Montana

Submitted on Briefs:  September 27, 2023

Decided:  November 28, 2023

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Glacier Electric Co-op, Inc. (Glacier) appeals an August 8, 2022 Judgment entered by the Ninth Judicial District Court, Glacier County, following a jury verdict in favor of Robert Winkowitsch (Winkowitsch) on his claim of nuisance against Glacier.

¶2 We restate the issue presented:

*Whether the District Court erred by instructing the jury that damages could be awarded for nuisance despite Montana's adoption of the common enemy doctrine.*

¶3 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 Winkowitsch and Glacier own adjacent properties north of Cut Bank, Montana. The parcels were respectively conveyed to the parties from common owners, Phil and Velma Cheety. Winkowitsch owns the southern parcel, while Glacier owns the parcel on the north side of their shared boundary. When Winkowitsch acquired the southern parcel in 1994, it came with two storage unit buildings situated on the property. Winkowitsch rented out storage space in these units, as well as space within additional units he built nearby. Glacier acquired the northern parcel in 2002, and it came with a building (the Cheety Building) that was originally used for the Cheetys' electronics repair company and later utilized by Glacier for office space.

¶5 Topographically, the land in the area of the parcels slopes from south to north, and ultimately drains runoff into a nearby ravine known as the "Old Maid's Coulee." Consequently, snow melt and surface water naturally flow through the Winkowitsch parcel

from south to north and onto an alleyway and the northern parcel owned by Glacier. According to testimony by both Winkowitsch and Glacier employees, this has been the drainage pattern in the area for at least several decades.

¶6 Glacier began experiencing infiltration of water into the interior of the Cheety Building on its parcel following heavy rain or snow. This apparently resulted in sheetrock damage and mold issues, as well as muddy conditions surrounding the Cheety building. In 2014, Glacier responded by laying asphalt in the alleyway separating the properties. One of Glacier's employees who oversaw the installation of the asphalt, Doug Ray, testified that Glacier's goal was to "tie" the asphalt lift in the alleyway to an existing concrete apron around the Cheety building to aid the flow of surface water and resolve issues with mud outside of the Cheety building. Winkowitsch testified that he told Ray he did not want the paved asphalt to stop the flow of water off his parcel. He gave permission to Glacier to lay asphalt all the way up to the storage buildings so long as the asphalt did not change the elevation of the ground.

¶7 However, the paving of the alley separating the properties resulted in a slight "lip" that essentially dammed all or part of the drainage, resulting in surface water returning to or remaining on the Winkowitsch parcel, where it pooled and damaged Winkowitsch's two original storage units. This also left Winkowitsch unable to continue to rent storage space in the units.

¶8 Winkowitsch sued Glacier for the damages caused by the flooding. The case proceeded to a jury trial on claims of both nuisance and negligence in June 2022. The District Court gave the following jury instructions:

> **Instruction No. 13**, Robert Winkowitsch claims that Glacier Electric Cooperative is liable for nuisance, based upon the installations of pavement between the two owner's properties. To prevail on the nuisance claim, Mr. Winkowitsch must prove by a preponderance of the evidence the following: One, that Glacier Electric's construction of pavement was injurious to Winkowitsch's property or obstructed the free use of Winkowitsch's property; that Mr. Winkowitsch has suffered damages, as a result of Glacier Electric's pavement installation. If you find in favor of Mr. Winkowitsch on the question of liability, then, you must determine the amount of money that will reasonably and fairly compensate for all lost costs by Glacier Electric Cooperative.

> **Instruction No. 14**, you are instructed that if the construction by the defendants has caused a condition which has or will produce intermittent but inevitable flooding, then plaintiff should be justly compensated by said defendants.

> . . .

> **Instruction No. 16**, a lower landowner owes no duty to the upper landowner, and the one is under no obligation to receive, from the other, the flow of any surface water, but may, in the ordinary prosecution of his business and in the improvement of its premises, by embankments or otherwise, preventing a portion of the surface water coming from such premise. Surface water is an enemy of all mankind, and each landowner has the right to protect its own land therefrom. In diverting such waters, the landowner is limited to reasonable care in avoiding damage to adjoining property.

¶9 Glacier objected to Instruction No. 13, arguing it conflicted with the "common enemy doctrine," and similarly objected to Instruction No. 14 on the ground that this was not a case of nuisance. Both objections were overruled. The jury thereafter returned a verdict in favor of Winkowitsch, finding that Glacier's paving of the alleyway between the

4

properties constituted a nuisance that had damaged his two storage units. The jury awarded $250,000 in damages to Winkowitsch on the nuisance claim and did not reach Winkowitsch's negligence claim against Glacier. Glacier appeals.

**STANDARD OF REVIEW**

¶10 "We review for abuse of discretion whether a district court correctly instructed the jury." *State v. Thorp*, 2010 MT 92, ¶ 32, 356 Mont. 150, 231 P.3d 1096. "While a district court has broad discretion to formulate jury instructions, that discretion is limited by the overriding principle that jury instructions must fully and fairly instruct the jury regarding the applicable law." *Peterson v. St. Paul Fire & Marine Ins. Co.*, 2010 MT 187, ¶ 22, 357 Mont. 293, 239 P.3d 904 (citation omitted). Thus, "the party assigning error to a district court's instruction must show prejudice in order to prevail, and prejudice will not be found if the jury instructions in their entirety state the applicable law of the case." *Tarlton v. Kaufman*, 2008 MT 462, ¶ 19, 348 Mont. 178, 199 P.3d 263. In determining whether the applicable law has been correctly stated, we also must consider the challenged instructions in connection with other instructions given and the evidence presented at trial. *Harding v. Deiss*, 2000 MT 169, ¶ 10, 300 Mont. 312, 3 P.3d 1286.

**DISCUSSION**

¶11 Glacier argues the District Court erred in giving Instruction No. 14 because the language was "tantamount to the imposition of strict liability" and "provided no exception for Glacier Electric's rights to protect its property under the common enemy doctrine." Winkowitsch responds that because Glacier failed to object to Instruction No. 16, it waived

any argument about the defense since Instruction No. 16 constituted a summation of the law on the common enemy doctrine in Montana.

¶12 Objections to jury instructions or special verdict forms are to be specific and must state with particularity the grounds upon which they are made. M. R. Civ. P. 51; *see Seltzer v. Morton*, 2007 MT 62, ¶ 54, 336 Mont. 225, 154 P.3d 561 ("We have held that failure to object to a jury instruction at trial constitutes a waiver of the opportunity to raise the objection on appeal.").

¶13 During settlement of instructions, when asked about Instruction No. 13, Glacier's counsel responded: "The objection is on the basis that it conflicts with the common enemy instruction." Regarding Instruction No. 14, counsel objected: "We don't think this is a case of nuisance." Taken together, Glacier was objecting to the instructions on the ground that a nuisance instruction and the common enemy doctrine were incompatible because, in Glacier's view, the common enemy doctrine granted Glacier license to divert surface water by installing pavement without requiring consideration of possible effects on adjoining landowners. Consequently, we conclude that, although Glacier did not specifically object to Instruction No. 16, it preserved its challenge by objecting to earlier instructions on the theory that the diversion activities pursued under the common enemy doctrine prevented recovery for nuisance. Thus, the asserted error was noted and preserved for appeal, and we turn to the instructions.

¶14 We agree with Glacier's argument that Instruction No. 14, by itself, is problematic because the text appears to impose strict liability for rerouted surface water and makes no

6

mention of Glacier's ability to appropriately divert or remove surface water from its property under the common enemy doctrine. Winkowitsch responds that Instruction No. 14 is a correct statement of nuisance law in Montana, citing to *State by Department of Highways v. Feenan*, 231 Mont. 255, 258, 752 P.2d 182, 184 (1988). However, in *Feenan*, this Court did not hold that plaintiffs should be compensated when an adjoining landowner causes flooding to their property without regard to how it happened. Instead, we explained that water could be diverted by landowners so long as it was done with "reasonable care." *Feenan*, 231 Mont. at 257, 752 P.2d at 184. Instruction No. 14 failed to articulate this standard and we therefore must look to other instructions to determine whether, in their entirety, they correctly stated the applicable law, *see Harding*, ¶ 10, specifically, the District Court's explanation of the common enemy doctrine in Instruction No. 16.

¶15 Glacier argues the common enemy doctrine in Montana supports an absolute defense to liability wherein adjoining landowners have no responsibility or obligation to each other when diverting surface water from their property. However, since 1944, this Court has recognized the common enemy doctrine is limited by the arcane maxim "*sic utere tuo ut alienum non laedas*"—"the use must be without malice or negligence." *O'Hare v. Johnson*, 116 Mont. 410, 419, 153 P.2d 888, 891 (1944). Though we remarked in *Tillinger v. Frisbie*, 138 Mont. 60, 62, 353 P.2d 645, 646 (1960), that "surface water is the enemy of all mankind" and thus "each landowner has the right to protect his own land therefrom," we have nonetheless continued to recognize that landowners do not possess unbounded authority to divert water from their property. *See, e.g., Covey v. Brishka*, 2019

7

MT 164, ¶ 31, 396 Mont. 362, 445 P.3d 785 ("In diverting surface waters, the landowner should exercise reasonable care to avoid damage to adjoining properties.").

¶16 Glacier reads our decision in *Tillinger* more expansively, relying on the following language:

> The lower landowner owes no duty to the upper landowner; each may appropriate all the surface water which falls upon his premises, and the *one is under no obligation to receive from the other the flow of any surface water, but may in the ordinary prosecution of his business and the improvement of his premises, by embankments or otherwise prevent any portion of the surface water coming from such upper premises.*

*Tillinger*, 138 Mont. at 62, 353 P.2d at 646 (emphasis in original). However, *Tillinger* merely stands for the idea that landowners are under no duty to receive or retain surface water flowing onto their land—not that they have no obligation to act in a reasonable manner when diverting water. That case did not immunize downstream landowners from potential liability for the manner in which they diverted water through use of trenches, dams, or other structures. Accordingly, our reasoning in *O'Hare* and later discussion in *Covey* are not undermined or limited by the holding in *Tillinger*. The District Court correctly presented the common enemy doctrine to the jury through Instruction No. 16, stating therein that "[i]n diverting such waters, the landowner is limited to reasonable care in avoiding damage to adjoining property," and we conclude this correct explanation muted the effect of improper Instruction No. 14. Viewing the District Court's jury instructions in their entirety and as they relate to one another, we cannot conclude that the instructions constitute reversible error.

8

¶17   Affirmed.


                                        /S/ JIM RICE


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR