DA 06-0719

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 428

FIRST CITIZENS BANK,

      Plaintiff and Appellant,

  v.

PATRICK J. SULLIVAN and GREG J. EIDE,

      Defendants and Appellees.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause No. DV 2003-236
Honorable John W. Whelan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Patrick T. Fleming, Fleming & O'Leary, PLLP, Butte, Montana

      For Appellee:

      Gregory C. Black, Sean E. Johnson, Corette Pohlman & Kebe,
Butte, Montana

          Submitted on Briefs:  January 4, 2008

             Decided:  December 16, 2008

Filed:

_____
          Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     First Citizens Bank (the Bank) brought this action to recover a deficiency due on a loan to Glacier Apparel Company, Ltd. (Glacier Apparel), which Patrick J. Sullivan and Greg J. Eide had guaranteed. Sullivan and Eide denied liability and filed counterclaims, including claims that Eide's guaranty had been exonerated and he had suffered damages as a result of the Bank's refusal to release a second mortgage on his home, and that Sullivan suffered damages as a result of the Bank's failure to liquidate collateral in a commercially reasonable manner. A jury in the Second Judicial District Court, Silver Bow County, found the Bank had not liquidated Glacier Apparel's collateral in a commercially reasonable manner, Eide's guaranty had been exonerated and he had been damaged by the Bank's refusal to release his guaranty, and Sullivan had established that a surplus would have been generated if the Bank would have liquidated the collateral in a commercially reasonable manner. The District Court then entered judgment awarding Sullivan and Eide their costs, expenses and attorney fees, resulting in a total judgment against the Bank of $260,111.25. The Bank appeals. We affirm.

¶2     The issues are:

¶3     1.    Did the District Court abuse its discretion in prohibiting the Bank from disclosing to the jury that Sullivan had pled guilty to a felony in an unrelated matter and had invoked his Fifth Amendment rights during a deposition in a Minnesota civil case?

¶4     2.    Did the District Court abuse its discretion in refusing to allow attorney J. Richard Orizotti to offer expert opinions?

2

¶5 3. Was sufficient evidence presented to support the jury's verdict that Eide was exonerated from his personal guaranty to the Bank?

¶6 4. Did the District Court abuse its discretion in awarding Sullivan and Eide $9,600 in legal fees for trial time of attorney Sean Johnson?

¶7 5. Did the District Court err in awarding expert witness fees and costs to Sullivan and Eide?

## BACKGROUND

¶8 In September 1997, the Bank agreed to provide a $15,000 revolving line of credit to Glacier Apparel for operation of a retail store in Whitefish, Montana. The line of credit was secured by the business's inventory, accounts, equipment and general intangibles. In addition, Sullivan provided a personal guaranty as the business's sole shareholder.

¶9 In January 2000, Sullivan sold a portion of the stock in Glacier Apparel to Eide. The two men decided to expand the company by opening additional stores in both Montana and Minnesota. For purposes of the expansion, the Bank agreed to increase Glacier Apparel's revolving line of credit to $75,000, and Eide and Sullivan each signed personal guaranties for that amount. As additional collateral, the Bank took a second mortgage on Eide's Fargo, North Dakota, home.

¶10 In April 2001, Sullivan re-purchased Eide's stock in Glacier Apparel, and Eide's association with the business ended. Then, on June 19, 2001, Sullivan and the Bank signed a Change of Terms Agreement under which Glacier Apparel's revolving line of credit was converted to a term loan repayable at $590.08 per month for five years, at

3

which time a balloon payment of $72,356.32 would become due. Sullivan signed the Change of Terms Agreement as both a guarantor of the loan and an officer of Glacier Apparel. The Bank did not seek Eide's signature or his consent to the Change of Terms Agreement. After June 2001, the Bank refused to provide Glacier Apparel an operating line of credit.

¶11 By letter dated July 6, 2001, Eide asked the Bank to cancel his guaranty and release the mortgage on his North Dakota home. The Bank refused to do so. Eide's attorney revoked his guaranty in a letter dated August 24, 2001, but the Bank refused to recognize that revocation.

¶12 In early 2002, Sullivan proposed to the Bank that he undertake a liquidation of some or all of the inventory collateral of the Glacier Apparel stores, for which purpose he requested an additional $20,000 loan to pay delinquent store rents. The Bank refused to complete the loan transaction without a personal guaranty of all of Glacier Apparel's obligations from Sullivan's son, which Sullivan was not willing to obtain. Sullivan then submitted a liquidation plan, to which the Bank did not agree. In April 2002, Glacier Apparel surrendered possession of the inventory collateral of its two Whitefish, Montana, stores and its two Missoula, Montana, stores to the Bank by having its attorney deliver to the Bank the keys to those stores.

¶13 Bank representatives took possession of the inventory and fixtures in the four Whitefish and Missoula stores, boxed that collateral and transported it to Butte, Montana, for storage at Christie's Warehouse. The Bank then solicited bids for the repossessed

collateral by advertising a bulk sale in the legal sections of the Sunday classified ads in newspapers in Missoula, Great Falls, Helena, Butte, Bozeman and Billings.

¶14 The advertised sale of Glacier Apparel's collateral received only two bids: one from a retail clothing vendor in Butte for $7,000 and another from two Bank customers for $13,750. The Bank rejected both bids as insufficient. Sullivan again offered to liquidate the collateral, but the Bank refused his offer. Sullivan then hired RGIS Inventory Specialists to conduct an inventory of the collateral in the Bank's possession. RGIS identified over 7,000 items of collateral with a cost basis of $239,290.34. Subsequently, the Bank rejected yet another offer by Sullivan to liquidate the collateral.

¶15 In late January 2003, the Bank gave Eide and Sullivan notice that it intended to sell the collateral in a private sale, which it did, for $15,000. After applying the sale proceeds against Glacier Apparel's debt, and adding to that debt repossession and liquidation expenses of over $26,000, the Bank determined Sullivan and Eide owed it over $11,000 more than Glacier Apparel had owed when it surrendered the collateral.

¶16 The Bank then filed this action against Sullivan and Eide to recover the balance due on Glacier Apparel's indebtedness. Sullivan counterclaimed that the Bank had failed to liquidate the collateral in a commercially reasonable manner. Eide joined that counterclaim, and also alleged the Bank improperly had refused to release the second mortgage on his home and that he was exonerated from his personal guaranty because the Bank had made a material change in the terms of the guaranteed obligation without his consent or knowledge.

¶17 The case was tried to a jury in a week-long trial. In a three-page verdict form, the jury found the Bank had neither liquidated Glacier Apparel's collateral in a commercially reasonable manner nor established the amount of proceeds that would have been realized if it had liquidated the collateral in a commercially reasonable manner. The jury further found a surplus would have been generated had Glacier Apparel's collateral been liquidated in a commercially reasonable manner, and Sullivan had established the amount of that surplus as $154,014. The jury found Eide's guaranty to the Bank was exonerated, the Bank's refusal to release Eide's guaranty and second mortgage caused him damage and the amount of damage to be awarded Eide was $7,000.

¶18 Following a post-trial hearing, the District Court awarded Sullivan and Eide their statutory costs of $2,900.73. The court further ordered that Sullivan and Eide were entitled to additional costs of $9,287.30 under the terms of the guaranties. The court also awarded Sullivan $2,586.02 and Eide $263.20 for their actual expenses incurred in attending depositions and trial. Finally, the court awarded Sullivan and Eide their attorney fees of $84,060. The Bank appeals.

## STANDARDS OF REVIEW

¶19 We review a district court's evidentiary rulings for abuse of discretion. *McDermott v. Carie, LLC*, 2005 MT 293, ¶ 10, 329 Mont. 295, ¶ 10, 124 P.3d 168, ¶ 10. We review a jury's verdict only to determine whether substantial credible evidence in the record supports the verdict. *Upky v. Marshall Mountain, LLC*, 2008 MT 90, ¶ 22, 342 Mont. 273, ¶ 22, 180 P.3d 651, ¶ 22. We review an award of attorney fees and costs for

6

abuse of discretion. *See e.g., Lewistown Propane Co. v. Moncur*, 2002 MT 349, ¶ 19, 313 Mont. 368, ¶ 19, 61 P.3d 780, ¶ 19.

## ISSUE 1

¶20 *Did the District Court abuse its discretion in prohibiting the Bank from disclosing to the jury that Sullivan had pled guilty to a felony in an unrelated matter and had invoked his Fifth Amendment rights during a deposition in a Minnesota civil case?*

¶21 Sullivan moved in limine to prohibit any testimony or evidence that he had exercised his Fifth Amendment right during a deposition in a separate civil lawsuit in Minnesota, or that he had pled guilty to charges of falsifying records to obtain a Small Business Administration loan in another case. The District Court granted his motion in writing, stating such testimony or evidence would be irrelevant and unduly prejudicial to Sullivan's defense and counterclaim. Just before trial began, the court orally clarified that this ruling would apply "unless the door is opened by the defendant."

¶22 On appeal, the Bank contends Sullivan's trial strategy was to portray himself to the jury as a feeble, grandfatherly figure who would never lie or fabricate. The Bank claims it had no way of effectively impeaching Sullivan because it was prohibited from mentioning his conviction and his reliance on his Fifth Amendment right.

¶23 The sole authority cited by the Bank in support of its position is *Cooper v. Rosston*, 232 Mont. 186, 756 P.2d 1125 (1988). *Cooper* was an action for damages from an automobile accident. In that case, the trial court had excluded evidence of misrepresentations and omissions by the defendant in statements he made to the police immediately after the accident. We held the court had erred in so doing. *Cooper*, 232 Mont. at 193, 756 P.2d at 1129.

¶24 The lack of connection in the present case between the evidence sought to be disclosed and the facts of the case distinguishes this case from *Cooper*. In addition, the District Court's ruling is supported by rules of evidence not applicable in *Cooper*. M. R. Evid. 609 provides, "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is not admissible." M. R. Evid. 404(b) provides that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Those rules prohibit evidence of Sullivan's prior criminal conviction. Moreover, and despite the District Court's "unless the defendant opens the door" clarification, the Bank has pointed to no instance during trial in which it asked the court to allow questioning about Sullivan's prior guilty plea or invocation of his Fifth Amendment right in response to or as follow-up to any specific testimony by him.

¶25 We hold the Bank has not established that the District Court abused its discretion in prohibiting evidence of these matters.

### ISSUE 2

¶26 *Did the District Court abuse its discretion in refusing to allow attorney J. Richard Orizotti to offer expert opinions?*

¶27 Shortly before trial, Sullivan and Eide moved to prohibit a witness for the Bank, attorney J. Richard Orizotti, from offering any expert opinions, based on the Bank's failure to timely disclose Orizotti as an expert witness. Sullivan and Eide stated they had served discovery requests on the Bank in August of 2004, including a request for identification of the Bank's expert witnesses, and the Bank had responded that it had

8

retained no expert witnesses but that Orizotti would be called as a witness to render opinions as to the reasonableness of steps he took in liquidating the collateral. Then, in its September 2005 scheduling order, the District Court established October 21, 2005, as the deadline for naming expert witnesses, but the Bank did not name Orizotti as an expert witness by that deadline. Finally, the Bank did not identify Orizotti as an expert witness in the final pretrial order, although it identified several other expert witnesses. The District Court granted the motion in limine.

¶28 The Bank argues exclusion of expert testimony by Orizotti was "inexplicable" because it had "fully disclosed" that Orizotti would be a witness and the testimony he would present. The Bank further argues that, because of repeated objections during Orizotti's testimony, his testimony was "greatly limited" and "lacked flow." The Bank asserts Orizotti should have been allowed to give his opinion under either M. R. Evid. 701, which allows a lay witness to give opinions which are rationally based on his own perceptions and are helpful to a clear understanding of the witness's testimony or for determination of a fact at issue, or under M. R. Evid. 702, which provides for testimony by experts.

¶29 Failure to disclose an expert witness will usually prejudice the opposing party. *Superior Enterprises, LLC v. Montana Power Co.*, 2002 MT 139, ¶ 18, 310 Mont. 198, ¶ 18, 49 P.3d 565, ¶ 18. We have, on a number of occasions, affirmed the authority of a district court to exclude expert testimony as a result of failure to properly disclose the expert witness. *Nelson v. Nelson*, 2005 MT 263, ¶ 32, 329 Mont. 85, ¶ 32, 122 P.3d

9

1196, ¶ 32. Here, the Bank did not disclose Orizotti as an expert witness despite three requests to do so.

¶30 The Bank discusses three occasions during trial in which it feels Orizotti should have been allowed to give opinion testimony. On two of those occasions, Orizotti's opinions would clearly have constituted expert opinion. In the first, the Bank's counsel asked Orizotti what he did with the invitation for bids for the collateral. Orizotti responded, "I prepared it and advised the Bank that it is commercially reasonable to . . . ." At that point, counsel for Sullivan and Eide objected that this was opinion testimony, and the court advised Orizotti that he could tell what advice he gave, but could not give an opinion. The next objection referenced by the Bank came while Orizotti was testifying about the bids received for the collateral. Orizotti testified the fact that the defendants did not submit a bid "signified to me that that was the market value of this property." The court ordered that remark stricken from the record on grounds that it was opinion testimony.

¶31 Finally, the Bank points to an objection made when Orizotti testified about something Sullivan told him. Because that objection was sustained on hearsay grounds, not on expert testimony grounds, it is not pertinent to this issue on appeal.

¶32 We hold the District Court did not abuse its discretion in refusing to allow Orizotti to testify as an expert witness.

### ISSUE 3

¶33 *Was sufficient legal and factual basis established to support the jury's verdict that Eide was exonerated from his personal guaranty to the Bank?*

10

¶34 The Bank argues there was no evidence to support Eide's claim that his underlying obligation to the Bank was exonerated. It points out that, in the guaranty Eide signed in February 2000, he expressly authorized the Bank to "alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the indebtedness or any part of the indebtedness, including increases and decreases of the rate of Interest on the indebtedness," without notice to the guarantors. The Bank contends the only changes made in the June 19, 2001 Change of Terms Agreement— which Eide did not sign—were to convert the revolving line of credit to 59 monthly installments with a balloon payment due on June 19, 2006, and to change the interest rate from 12% to 8.75%. The Bank says these changes were within the terms to which Eide had agreed in his guaranty.

¶35 At the close of the Bank's case-in-chief, Eide argued to the District Court that the terms of the guaranty were contrary to § 28-11-211, MCA, and moved for directed verdict (properly denominated a motion for dismissal due to insufficiency of the evidence[1]) on that basis. The District Court denied Eide's motion. As a result, the matter of exoneration was a question presented to the jury.

¶36 The Bank presented evidence at trial regarding the terms of the guaranty Eide had signed. During closing argument, the Bank presented to the jury its argument that it did not materially alter the terms of the guaranty, that Eide did not need to be notified of any changes and that the guaranty had not been exonerated.

---

[1] *State v. McWilliams*, 2008 MT 59, ¶ 36, 341 Mont. 517, ¶ 36, 178 P.3d 121, ¶ 36.

11

¶37 Eide testified at trial that he was not aware of the Change of Terms Agreement until the Bank filed this action. He testified the alteration of the underlying obligation which he guaranteed from a line of credit to a term loan changed and extended his exposure as a guarantor. Other witnesses, including banker and expert witness John Koslosky and banker Casey Reilly, agreed that the Change of Terms Agreement was a change in the underlying obligation. Eide also presented evidence that the Bank chose not to enforce its security interest in collateral in Glacier Apparel's Minnesota store, which adversely affected him because it increased his exposure on his personal guaranty.

¶38 Based on § 28-11-211, MCA, the District Court instructed the jury that

> Greg Eide is exonerated from his personal guaranty if by any act of First Citizens Bank without the consent of Greg Eide the original obligation which he guaranteed was altered to his detriment by First Citizens Bank in any respect or the remedies or rights of First Citizens Bank against Glacier Apparel Company in respect to the original obligation are in any way impaired or suspended. Exoneration means that Greg Eide is not liable to First Citizens Bank on his personal guaranty.

The jury found that Eide was exonerated.

¶39 Having reviewed the record, we have determined that Eide presented substantial credible evidence which supports the jury's verdict. We hold the evidence was sufficient to support the verdict.

## ISSUE 4

¶40 *Did the District Court abuse its discretion in awarding Sullivan and Eide $9,600 in legal fees for trial time of attorney Sean Johnson?*

¶41 Attorney Sean Johnson attended every day of the five-day trial, seated at Sullivan and Eide's counsel table. The Bank points out that Johnson handled only one foundation

witness at trial and his participation consisted of asking fewer than 40 questions. Relying on *Plath v. Schronrock*, 2003 MT 21, 314 Mont. 101, 64 P.3d 984, the Bank argues the $9,600 in attorney fees awarded for trial time of attorney Johnson represents an abuse of discretion.

¶42 We begin by reiterating that determination of attorney fees is a discretionary function of the trial court. *Lewistown Propane*, ¶ 19. In *Plath*, ¶ 36, we stated the reasonableness of attorney fees must be ascertained under the facts of the case, with the following factors as guidelines: (1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys.

¶43 Sullivan and Eide filed an affidavit prepared by Gregory C. Black, their lead trial attorney, who documented the expenses and billing records of his law firm in this case, including billing records for Sean Johnson. In his affidavit, Black stated that, in his opinion based on 27 years of experience, this was a very difficult case with complicated legal and factual issues. Black's affidavit indicates that, in addition to conducting a witness examination, Johnson assisted during trial with jury instructions, legal research concerning trial issues, preparation of witnesses and general trial logistics. At the hearing on attorney fees, Sullivan and Eide presented expert witness William Joyce, who testified he had reviewed Black's affidavit and that, in his opinion, the work reflected in that

13

affidavit was reasonable and necessary for the case and the hourly rates reflected in Black's affidavit were reasonable.

¶44 We hold the District Court did not abuse its discretion in its award of attorney fees for trial time of attorney Sean Johnson.

## ISSUE 5

¶45 *Did the District Court err in awarding expert witness fees and costs to Sullivan and Eide?*

¶46 The District Court awarded expert witness fees and other litigation costs claimed by Sullivan and Eide. The Bank points out that some of the expert witness fees and costs awarded by the District Court are not costs allowed under § 25-10-201, MCA.

¶47 However, Sullivan and Eide did not seek to recover these witness fees and costs under § 25-10-201, MCA, but under the terms of their guaranties. The guaranties provided "Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty." Contractual attorney fee and cost provisions are reciprocal. Section 28-3-704, MCA; *Nicholson v. United Pacific*, 219 Mont. 32, 46, 710 P.2d 1342, 1351 (1985), *overruled in part on other grounds, Story v. City of Bozeman*, 242 Mont. 436, 791 P.2d 767 (1990).

¶48 We hold the District Court did not err in awarding witness fees and costs to Sullivan and Eide.

14

¶49 Affirmed, and remanded to the District Court for determination of additional attorney fees incurred by Sullivan and Eide in post-trial matters not previously claimed and during this appeal.

/S/ JAMES C. NELSON

We Concur:

/S/ JOHN WARNER
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS