Justice James Jeremiah Shea delivered the Opinion of the Court.
***366 ¶1 Appellants Alexander and Ilma Brishka, as co-trustees of the Brishka Trust (collectively "Brishkas"), appeal the jury trial verdict and judgment of the Eleventh Judicial District, Flathead County, finding the Brishkas strictly liable for the breach of a pond on their property and awarding damages to Michael and Stacy Covey and the Covey Trust (collectively "Coveys"). We address the following issues on appeal:
Issue One: Whether the District Court erred in its application of strict liability.
Issue Two: Whether the District Court erred when it allowed the Coveys to claim the full amount of damages for the increased cost to the driveway project.
Issue Three: Whether the District Court erred by allowing evidence regarding the diminution of the Coveys' property value.
Issue Four: Whether the Coveys made improper closing arguments regarding the Brishkas' alleged negligence.
Issue Five: Whether the District Court erred when it excluded evidence of other causes of the pond breach.
¶2 We affirm.
***367 PROCEDURAL AND FACTUAL BACKGROUND
¶3 In January of 2000, the Brishkas purchased property on Big Mountain Road in Whitefish. The Brishka property included a 4.5 million-gallon man-made fish pond built by a previous owner. In 2005, the Coveys purchased a plot of land on Whitefish Lake, downhill from the Brishka property.
¶4 In 2009, the Coveys commenced plans to construct a home on their property. They hired landscape architects, engineers, and excavators to design and build a driveway to access the property. Prior to beginning construction, and as part of their investigation, the engineers dug test pits, which revealed no water, and concluded the soils on the property were dry. The engineers noted a culvert existed uphill from a neighboring property, but the engineering investigation revealed water did not historically drain through it. The excavators similarly concluded the soil conditions were dry.
¶5 Due to the steep terrain, it was necessary for the driveway project to traverse the lots of adjacent property owners, Cora Belle and Patrick Montalban (the Montalbans). The initial driveway bid was $233,000. The Coveys contracted with all of the necessary parties and paid all of the upfront costs for the driveway construction. The Coveys testified that they had an informal agreement with the Montalbans to be reimbursed a pro rata share of the driveway project costs.
¶6 During a large storm on August 2-3, 2013, the Brishkas' pond breached its banks and water flowed downslope. The water carried boulders, trees, and other debris downhill and carved large channels into the hillside. Following the pond breach, the Coveys conducted additional surveys. The engineers and excavators concluded the ground was saturated, water was flowing through the culvert that historically was dry, and measurements revealed historical drainage patterns *790 were greatly altered by the pond breach.
¶7 On July 28, 2016, the Coveys brought suit against the Brishkas for negligence, nuisance, strict liability, and trespass. On September 8, 2017, the Coveys filed an amended complaint. Following the Brishkas' pond breach, the Coveys alleged the driveway construction bid was increased to $498,000. The Brishkas responded that they were not responsible for the damage to the Coveys' property and, as one of their asserted defenses, contended that another party was the cause of the Coveys' damage.
¶8 In response to discovery requests, the Coveys described their damages as:
[The Coveys] suffered damages in the amount of $265,512.87. This is the cost of the road construction, drainage features, engineering ***368 and design to mitigate the groundwater and surface water flows resulting from the pond breach. The amount was calculated by subtracting the amount of the original competitive bid-awarded prior to the pond failure-from the final completed expense of the Project.
[The Coveys] also claim emotional distress damages for the interference with the use of their property. This is a claim for general damages that will be determined by a jury based on the evidence presented and thus no calculation has been made.
The Pretrial Order set forth the Coveys' damages as the increased cost of the driveway project and all damages "allowed by law including economic, tort damages, damages to property, and emotional distress."
¶9 Both parties filed several motions in limine . The Coveys moved to exclude, among other things, evidence at trial regarding road construction by the Montana Department of Transportation (DOT) that allegedly affected the drainage into the Brishkas' pond. The Brishkas moved to prohibit the Coveys from claiming the entire amount of $265,512.87 for the increased cost of the driveway project. The Coveys opposed that motion and sought to preclude the Brishkas from arguing at trial that the Coveys had not suffered the entire amount of $265,512.87 for the increased cost of the driveway project.
¶10 From April 2-4, 2018, the District Court presided over a three-day jury trial. Immediately prior to the start of the trial, the District Court orally ruled on the parties' motions in limine . The District Court granted the Coveys' request to exclude testimony that would apportion any liability to DOT. The District Court also determined the Brishkas could not introduce evidence that the Montalbans were sharing the increased cost of the driveway project with the Coveys.
¶11 At trial, Michael Covey, over objection, testified that he was solely responsible for paying the entire amount of the increased cost of the driveway project. Michael Covey also offered testimony, over objection, speculating as to a decrease in the property value following the pond breach. The Coveys presented expert testimony that an outlet culvert that drained from the Brishkas' pond was obstructed by a berm on one side of the pond, making a pond breach more likely.
¶12 At the close of trial, the Coveys withdrew their trespass, nuisance, and negligence claims, preserving only the strict liability claim. The District Court analyzed whether the Brishkas' pond was an abnormally dangerous activity or condition such that strict liability should apply based on two lines of case law:
It appears to me that there are two separate lines of cases that address the situation, one is embodied in ***369 Dutton [v. ] Rocky Mt. Phosphates ... [a case that held] that impoundment of material on your property the property owner can be strictly liable for.
Certainly in this case this was an impoundment of water on the property .... [Next,] the Montana Supreme Court in Matkovic [v. ] Shell Oil ... adopted the Restatement Second of Tort's [d]efinition of Strict Liability stating: 'One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity though he has exercised the utmost care to prevent the harm; two, the strict liability is limited to the kind of harm the possibility of which makes the activity abnormally dangerous.'
*791 In Chambers [v. ] City of Helena , ... the [C]ourt articulated the factors for determining whether an abnormally dangerous condition exists, the same ones as adopted in Matkovic and Restatement Second...."
The District Court applied each factor from the Restatement (Second) of Torts to the condition of the Brishkas' pond and concluded that "maintenance of the pond constitute[d] an abnormally dangerous condition" warranting application of strict liability.
¶13 During closing argument, the Coveys' counsel discussed testimony regarding the blocked outlet culvert and the berm on the Brishkas' property and used this testimony to cast doubt on Alexander Brishka's credibility as a witness. The District Court overruled the Brishkas' objection that the evidence about the blocked culvert and berm were no longer relevant for the only remaining claim: strict liability.
¶14 The District Court instructed the jury that the Coveys brought a claim for strict liability, and that it had ruled that the Brishkas are strictly liable for any harm caused by the breach of their pond. The District Court then instructed the jury that it would be analyzing only the issues of causation and damages. The District Court instructed that if the jury found the Brishkas' pond caused the Coveys' harm, it "must determine the amount of damages that will reasonably and fairly compensate the [Coveys] for the harm caused by the [Brishkas]."
¶15 The District Court gave the following instruction regarding assessment of damages:
For claims involving damage to real property, you may award damages for:
(1) the difference between the value of the land before the harm and the value after the harm, or at [the Coveys'] election in an appropriate case, the cost of restoration that has been or may be reasonably incurred;
(2) the loss of use of the land; and ***370 (3) discomfort and annoyance to [the Coveys as occupants].
Neither party objected.
¶16 After instructing the jury, the District Court submitted the following special verdict form to the jury:
(1) The Court has found the Brishka Trust strictly liable for all harm caused by a breach of its pond.
(2) Did the Brishka Trust's liability cause damages to the Covey Trust?
...
(3) What is the amount of damages suffered by the Covey Trust?
...
(4) Did the Brishka Trust's liability cause damage to Mike and Stacey Covey?
...
(5) What is the amount of damages suffered by Mike and Stacey Covey?
¶17 The jury deliberated and reached a verdict in favor of the Coveys. The jury found that the Brishkas' liability caused the Coveys to suffer damages. The jury awarded damages of $211,563.40 to the Covey Trust and damages of $101,667 to Michael and Stacey Covey. On May 18, 2018, the District Court entered its written judgment setting out the jury award and, additionally, awarded the Coveys costs in the amount of $2,053.82. The Brishkas filed a Motion for a New Trial, along with a supporting brief and response. The Brishkas' Motion was deemed denied in August 2018.
STANDARDS OF REVIEW
¶18 A district court's determination of whether an activity or condition is abnormally dangerous such that strict liability should apply is a conclusion of law that we review for correctness. Chambers v. City of Helena , 2002 MT 142, ¶¶ 18-19, 310 Mont. 241, 49 P.3d 587, overruled on other grounds by Giambra v. Kelsey , 2007 MT 158, ¶¶ 24 n.2, 25-27, 338 Mont. 19, 162 P.3d 134.
¶19 We review a district court's decision to admit or exclude evidence for an abuse of discretion. Cleveland v. Ward , 2016 MT 10, ¶ 9, 382 Mont. 118, 364 P.2d 1250 ; Larchick v. Diocese of Great Falls-Billings , 2009 MT 175, ¶ 52, 350 Mont. 538, 208 P.3d 836 (reviewing a district court's grant of a motion in limine for an abuse of discretion). A district court abuses its discretion only if it *792 acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason resulting in substantial injustice. Larchick , ¶ 52 ; Faulconbridge v. State , 2006 MT 198, ¶ 22, 333 Mont. 186, 142 P.3d 777. A district court ***371 has broad discretion in its rulings on questionable testimony that may amount to prejudicial evidence. State v. Long , 2005 MT 130, ¶ 27, 327 Mont. 238, 113 P.3d 290 ; see also Evans v. Scanson , 2017 MT 157, ¶ 26, 388 Mont. 69, 396 P.3d 1284.
¶20 This Court reviews a jury verdict to determine whether substantial evidence exists to support the jury's findings. Wise v. Ford Motor Co. , 284 Mont. 336, 339, 943 P.2d 1310, 1312 (1997). Substantial evidence is "evidence that a reasonable mind might accept as adequate to support a conclusion." Seltzer v. Morton , 2007 MT 62, ¶ 94, 336 Mont. 225, 154 P.3d 561.
DISCUSSION
¶21 Issue One: Whether the District Court erred in its application of strict liability.
¶22 We impose the obligation on a property owner to use " 'his own rights [so] as not to infringe upon the rights of another.' " Dutton v. Rocky Mt. Phosphates , 151 Mont. 54, 67, 438 P.2d 674, 681 (1968) (quoting Fleming v. Lockwood , 36 Mont. 384, 388, 92 P. 962, 963 (1907) ). A property owner " 'who maintains a condition, or engages in an activity, which involves a high degree of risk of harm to others and is abnormal in the community and inappropriate to its surroundings is strictly liable for the harm which it causes.' " Dutton , 151 Mont. at 66-67, 438 P.2d at 680-81 (quoting Prosser on Torts, 2d. Ed. 1955, p. 329, Chapter 11, Strict Liability, § 59, Abnormal Things and Activities). The property owner is liable even if he acted with reasonable care. Christian v. Atl. Richfield Co. , 2015 MT 255, ¶ 49, 380 Mont. 495, 358 P.3d 131 (citing Matkovic v. Shell Oil Co. , 218 Mont. 156, 159-60, 707 P.2d 2, 3-5 (1985) (adopting and quoting Restatement (Second) of Torts §§ 519 - 20 (1976) )); Chambers , ¶ 16.
¶23 While strict liability is limited to instances of harm that made the activity or condition abnormally dangerous, Chambers , ¶ 16 (citing Restatement (Second) of Torts § 519 ), a tortfeaser is "answerable for all the damage which is a natural consequence" of the abnormally dangerous activity, Dutton , 151 Mont. at 65, 438 P.2d at 680. Whether an activity or condition is "abnormally dangerous" is a determination for the district court, and it must weigh the following factors in making its determination:
(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
(b) likelihood that the harm that results from it will be great;
(c) inability to eliminate the risk by the exercise of reasonable care;
***372 (d) extent to which the activity is not a matter of common usage;
(e) inappropriateness of the activity to the place where it is carried on; and
(f) extent to which its value to the community is outweighed by its dangerous attributes.
Chambers , ¶¶ 16, 18 (quoting Restatement (Second) of Torts § 520 ); Matkovic , 218 Mont. at 159-60, 707 P.2d at 5. To make a determination that an activity is abnormally dangerous, all factors need not be present, but a district court must nonetheless consider all the factors. Chambers , ¶ 21 ; see also Dutton , 151 Mont. at 66-67, 438 P.2d at 681 (analyzing factors to be considered for strict liability prior to the adoption of the Restatement (Second) of Torts § 520 ).
¶24 Prior to the adoption of the Restatement (Second) of Torts factors for assessing strict liability for water escape or improper impoundment of substances, this Court has focused on abnormal and inappropriate retention. Dutton , 151 Mont. at 66, 438 P.2d at 681. In Dutton v. Rocky Mt. Phosphates , this Court upheld a finding of strict liability against a plant that released toxic fumes into the air and caused harm to local livestock. Dutton , 151 Mont. at 61, 68-69, 72, 438 P.2d at 678, 681-83. Despite the upgrades and improvements on the plant's filtering equipment made contemporaneously with litigation, the district court evaluated the activity as it currently was and concluded it posed such a threat that application of strict liability *793 was appropriate. Dutton , 151 Mont. at 68, 71-72, 438 P.2d at 681-83.
¶25 After the close of evidence, the District Court concluded it was appropriate to apply strict liability to the condition of the Brishkas' pond. The District Court analyzed the application of strict liability to the pond under Dutton , Matkovic , and Chambers .
¶26 The Brishkas argue the District Court erred by failing to apply the correct standard to strict liability for abnormally dangerous activities when it found that the Brishkas' negligence created an abnormally dangerous condition. The Brishkas also argue the District Court erred by failing to limit the scope of strict liability to the kind of harm which makes the activity abnormally dangerous. The Brishkas contend that the danger associated with having a fish pond on the side of a mountain is the potential that a "swale of water"[1] will impact downhill property owners should the pond breach. Instead, the harm caused-a change in historical drainage patterns on the mountain-was not the ***373 type of harm strict liability for this abnormally dangerous activity was intended to protect against. Finally, the Brishkas argue that the District Court erred by failing to recognize and apply the Common Enemy Doctrine.
¶27 The Coveys respond that the District Court correctly found the condition of the Brishkas' pond was an abnormally dangerous condition subject to strict liability. We agree.
¶28 The District Court appropriately analyzed the Brishkas' liability under each Restatement factor as it was required to do. See Chambers , ¶ 21. The District Court correctly concluded: factor (a), "existence of a high degree of risk" to persons, property, or chattel of others weighed in favor of constituting an abnormally dangerous activity, as testified to by the Brishkas and other expert witnesses; factor (b), "likelihood that harm results from it will be great," weighed in favor of finding an abnormally dangerous activity, as evinced by testimony at trial and the damage to the Coveys' and the Montalbans' properties; factor (c), "inability to eliminate the risk by exercise of care" was held in balance because "through the exercise of care had the culvert not been obstructed ... or a spillway been installed, as was advised, the risk [of a breach] could have been eliminated at least to some extent"; factor (d), whether the activity or condition was a matter of "common usage" or not, weighed in favor of finding an abnormally dangerous condition because retention and maintenance of a pond of this size was not of common usage; factor (e), "inappropriateness of the activity to the place where it was carried on," was held in balance-although evidence regarding this factor was not presented, the primary purpose of the pond was for personal fishing by the Brishkas; and factor (f), "value to the community," weighed in favor of finding an abnormally dangerous condition because the pond offered little, if any, community value and any value was outweighed by the dangerous attributes. See Chambers , ¶¶ 16, 18 (citing Restatement (Second) of Torts § 519 ).
¶29 The Brishkas take particular issue with the District Court's analysis of factor (c): inability to eliminate the risk by the exercise of care. However, in pointing out the culvert or spillway options, the District Court was merely stating that the risk from a pond-bank breach could be mitigated by the installation of such features. Regardless of any hypothetical mitigation, it is clear such care was not exercised. After weighing all of the factors and the risks of having a 4.5-million-gallon man-made pond on the side of a mountain, uphill from others' personal property, that had the potential to cause catastrophic damage if the walls were breached, the District Court concluded the pond was abnormally dangerous and presented a great ***374 risk of harm. See Chambers , ¶ 21. Accordingly, the District Court applied the correct standard.
¶30 Additionally, the discharge of water from an uphill pond breach that damages the downhill property owner's land is exactly the type of harm that makes owning a fish pond on the side of a mountain a potentially abnormally dangerous activity or condition. See Chambers , ¶ 16 ;
*794 Dutton , 151 Mont. at 65, 438 P.2d at 680 ; Restatement (Second) of Torts, § 519. The Brishkas' contention that the damage caused by the pond breach is not the type of harm that falls within the scope of strict liability is unpersuasive.
¶31 The Brishkas' argument that the District Court should have analyzed and applied the Common Enemy Doctrine is similarly unavailing. Under the Common Enemy Doctrine, a landowner is not liable "for vagrant surface waters which cross his land and go onto his neighbor's land." State Dep't of Highways v. Feenan , 231 Mont. 255, 258, 752 P.2d 182, 184 (1988) (citing Roope v. Anaconda , 159 Mont. 28, 32-33, 494 P.2d 922, 924 (1972) (an uphill property owner does not owe a duty to his neighbors to prevent surface water from entering the neighbor's property)). In diverting surface waters, the landowner should exercise reasonable care to avoid damage to adjoining properties. Feenan , 231 Mont. at 258, 752 P.2d at 184 (citing O'Hare v. Johnson , 116 Mont. 410, 418, 153 P.2d 888, 891 (1944) ). The District Court considered the Common Enemy Doctrine after the Brishkas moved for a directed verdict on that theory at the close of evidence. The District Court denied the motion. Vagrant surface waters were not the cause of the Coveys' damages-the Brishkas' pond was. The District Court was not obligated to analyze and apply a legal theory not grounded in the facts and inapposite to the case.
¶32 The District Court did not err when it determined the Brishkas were strictly liable for any damage their pond might cause because it constituted an abnormally dangerous condition. See Chambers , ¶¶ 16, 18.
¶33 Issue Two: Whether the District Court erred when it allowed the Coveys to claim the full amount of damages for the increased cost to the driveway project.
¶34 Generally, a party may not apportion fault or damages to a nonparty. See e.g., Truman v. Mont. Eleventh Jud. Dist. Ct ., 2003 MT 91, ¶¶ 19-20, 315 Mont. 165, 68 P.3d 654 ; see also Seltzer , ¶ 166 n.25. If a defendant believes a third party is liable for all or part of the damages claimed by a plaintiff, the defendant may seek contribution from the third party. See Plumb v. Fourth Jud. Dist. Ct. , 279 Mont. 363, 377-78, 927 P.2d 1011, 1019-20 (1996), superseded by statute on ***375 other grounds .
¶35 In Dew v. Dower , this Court held that a district court erred when it awarded damages that belonged to property owners who were not plaintiffs at the time of judgment. Dew v. Dower , 258 Mont. 114, 128, 852 P.2d 549, 557 (1993). There were initially six plaintiffs in the suit: three sets of husbands and wives, and each couple jointly owned their respective properties as co-tenants. Dew , 258 Mont. at 127-28, 852 P.2d at 557. At the close of evidence, the plaintiffs' counsel withdrew the claims of the three wives, and the district court ultimately awarded 100 percent of the damages related to the three sets of property to the husbands who remained as plaintiffs. Dew , 258 Mont. at 127, 852 P.2d at 557. This Court concluded the husbands were not entitled to be awarded damages to interests that belonged to their wives, who were no longer parties to the action. Dew , 258 Mont. at 128, 852 P.2d at 557. We held that allowing one co-tenant to sue for all damages could infringe on the rights of the other co-tenant and raised due process concerns. Dew , 258 Mont. at 128, 852 P.2d at 557. Further, we concluded that the district court lost jurisdiction because the wives were dismissed from the action. Dew , 258 Mont. at 128, 852 P.2d at 557.
¶36 The District Court excluded evidence of non-party damages and sustained the Coveys' objections to the Brishkas' questions to Michael Covey about whether the Montalbans had reimbursed the Coveys for costs associated with the driveway project.
¶37 The Brishkas argue that, in direct contravention to the precedent in Dew v. Dower , the District Court erred in allowing the jury to award the Coveys damages they did not suffer. The Brishkas argue that because the nonparty Montalbans incurred damages as well, they should have been party to this suit and/or the Coveys should not have been permitted to recover damages from the Brishkas that are properly owed to the Montalbans. The Brishkas further argue that because the District Court failed to recognize the necessity of including the Montalbans *795 as parties to this suit, the District Court lost jurisdiction over the amount the Montalbans had paid the Coveys of the $265,512.87 requested in the case.
¶38 The Coveys respond that the District Court did not abuse its discretion when it allowed the Coveys to make a claim for increased construction costs when it was the Coveys who were contractually obligated to pay those increased costs and did, in fact, pay them. The Coveys maintain that their informal arrangement with neighboring property owners for reimbursement for a pro rata share of the initial driveway costs-which was not paid-did not divest the District Court ***376 of jurisdiction. The Coveys also argue the Brishkas failed to raise the jurisdictional argument before the District Court and cannot now raise that argument for the first time on appeal. We agree.
¶39 The record establishes that the Coveys alone entered into contracts with the engineers and excavators and were on the hook for all expenses associated with the driveway project. The Coveys testified that they alone bore the costs for the entire initial driveway construction costs and the entire increase in costs. Unlike the plaintiffs in Dew , the Montalbans were never party to the lawsuit, did not have a co-tenant or agency relationship with the Coveys, and were not in any danger of having their due process rights infringed upon when the Coveys sought recovery of the full increase in the cost of the driveway project. See Dew , 258 Mont. at 128, 852 P.2d at 557. Further, the Montalbans could not be parties to claim the increased contractual damages because they were not parties to the original construction contract. While the Coveys testified they had an "understanding" with the Montalbans that they would receive reimbursement for a share of the original driveway construction costs, the Coveys made it clear that they have not, as yet, received said reimbursement. Any informal agreement between the Coveys and Montalbans was not relevant for purposes of determining any damages the Coveys may have suffered.
¶40 The Coveys did not apportion liability to the Montalbans or collect damages on their behalf. See Truman , ¶¶ 19-20. Further, the Brishkas do not argue the Montalbans might be liable for part of the Coveys' damages. See Plumb , 279 Mont. at 377-78, 927 P.2d at 1019-20. The District Court did not abuse its discretion when it excluded evidence of an arrangement for payment of driveway costs between the Montalbans and Coveys and when it did not require the Montalbans to be joined as parties. See Ward , ¶ 9.
¶41 Issue Three: Whether the District Court erred by allowing evidence regarding the diminution of the Coveys' property value .
¶42 " 'The function of this Court is not to agree or disagree with the jury's verdict.' " Murray v. Whitcraft , 2012 MT 298, ¶ 26, 367 Mont. 364, 291 P.3d 587 (quoting Renville v. Taylor , 2000 MT 217, ¶ 14, 301 Mont. 99, 7 P.3d 400 ). In our review of jury verdicts in civil cases, the prevailing party "is entitled to any reasonable inference that can be drawn from the facts which are proven," and we will not reweigh evidence presented or disturb a jury verdict that is supported by substantial evidence. Sandman v. Farmers Ins. Exch. , 1998 MT 286, ¶ 41, 291 Mont. 456, 969 P.2d 277 (internal citations omitted); Weber v. State , 253 Mont. 148, 153, 831 P.2d 1359, 1362 (1992). Accordingly, where a jury form does not clearly apportion a plaintiff's damages, ***377 success on one claim should not force a new trial on damages where substantial evidence supports any ground for recovery. See Sunburst Sch. Dist. No. 2 v. Texaco, Inc. , 2007 MT 183, ¶¶ 66-67, 338 Mont. 259, 165 P.3d 1079.
¶43 Further, where a defendant does not object to a verdict form or seek to have damages apportioned based on each cause of action, claim, or category of damages, courts should not second-guess the jury's award. Ammondson v. Nw. Corp. , 2009 MT 331, ¶¶ 80-82, 353 Mont. 28, 220 P.3d 1 ; Sunburst , ¶¶ 66-67 ; Pac. Hide & Fur Depot v. Emineth Custom Homes, Inc. , 2016 MT 114, ¶ 20, 383 Mont. 373, 373 P.3d 829 ; Horn v. Bull River Country Store Props. , 2012 MT 245, ¶ 25, 366 Mont. 491, 288 P.3d 218 ; Whitcraft , ¶ 12 (this Court " 'will not speculate' when the verdict form does not explain the jury's thought process...."); Seltzer , ¶ 97.
*796 ¶44 Diminution in property value is a recognized measure of damages for injury to property. McEwen v. MCR, LLC , 2012 MT 319, ¶ 28, 368 Mont. 38, 291 P.3d 1253 (citing Sunburst , ¶ 30 ). The diminution of property value is the "difference between the value of the property before and after the injury...." Sunburst , ¶ 30. Montana law allows a property owner to testify as to the value of his personal property, Dutton , 151 Mont. at 69, 438 P.2d at 682, and how he arrived at that value for the property uses for which he is currently engaged, K & R P'ship v. City of Whitefish , 2008 MT 228, ¶¶ 43, 45, 344 Mont. 336, 189 P.3d 593.
¶45 In responses to interrogatories and in the Pretrial Order, the Coveys identified their damages as the increased cost of the road construction, drainage features, engineering, and design to mitigate the groundwater and surface water flows resulting from the pond breach in the amount of $265,512.87. The Coveys also asked for emotional distress damages for the interference with the use of their property. Additionally, the Coveys stated in briefing that their "property sustained damages due to increased storm water and ground water." Michael Covey was permitted to testify, over objection, to the estimated cost of his neighbor's property and to his estimation of the value per square foot of the Coveys' Property and how that property value had diminished following the Brishkas' pond breach. Later, the Brishkas attempted to strike the testimony from the record, but the District Court disagreed.
¶46 During closing arguments, the Coveys asked for the following damages: (1) damages for economic harm-the road construction: $265,512.87; (2) damages to the property, approximated to be $315,000; and (3) emotional distress damages to Michael and Stacy Covey. The ***378 jury instructions and verdict form all discussed general damages, and both parties in closing argument described "three kinds of damages," including diminution of property value or "damages to the property" generally. The jury awarded the Covey Trust $211,563.40 and awarded Michael and Stacey Covey $101,667.
¶47 The Brishkas argue the District Court erred by allowing the Coveys to recover damages for the diminution of value of their property even though the Coveys failed to plead or to disclose a claim for diminution. The Brishkas further argue it was error to allow Michael Covey to testify as to diminution in value of the property, as his testimony was neither reasonable nor based on intelligent and correct judgment beyond what the average person would know, and Michael Covey was not technically the landowner-the Covey Trust was.
¶48 The Coveys respond that the District Court did not abuse its discretion when it allowed the Coveys to make a claim for property damages when general damage to the Covey Property was an issue throughout the case.
¶49 In closing arguments, the Coveys asked for damage amounts that do not match the ultimate jury damage award. Despite the Coveys' representation that $119,480.40 of the jury award was for increased driveway construction costs and $92,083 was for general property damage,[2] the verdict form did not break apart damages in that way, and neither the parties nor the courts can surmise what the breakdown of those figures meant. See Weber , 253 Mont. at 153, 831 P.2d at 1362. It is impossible to determine from the verdict form how the jury apportioned the damage award among the Coveys' various claims. See Sunburst , ¶¶ 66-67. The dispositive fact remains that that the line on the verdict form setting out damages to the Covey Trust listed $211,563.40.
¶50 The Brishkas correctly point out that the Coveys did not plead, respond to, or otherwise mention a diminution of the value of the Coveys' real property. However, here there is clearly sufficient evidence to support the jury's award of damages, exclusive of the diminution in property value. See Sunburst , ¶¶ 66-67. Assuming, for the sake of argument, that it was error to allow the jury to *797 receive testimony regarding the diminution of property value, as long as the ***379 damages pled and evidence presented could substantially support the verdict, this Court will not disturb the jury's verdict. See Sandman , ¶ 41 ; Weber , 253 Mont. at 153, 831 P.2d at 1362. We conclude that substantial evidence supported the jury's award, and we will not second guess the verdict. See Whitcraft , ¶¶ 7, 26 ; Weber , 253 Mont. at 153, 831 P.2d at 1362.
¶51 Additionally, the Brishkas' failure to object to the jury instructions regarding damages for the "loss caused" by the Brishkas constitutes a waiver of the of the opportunity to later object. See Seltzer , ¶ 54. It was also incumbent on the Brishkas to object to the verdict form. See Ammondson , ¶¶ 80-82 ; Pac. Hide , ¶ 20 ; Whitcraft , ¶ 12 ; Horn , ¶ 25. We will not hold a district court in error where counsel did not object at the time of settling instructions or did not request a separate line for each category of damages on the verdict form. Horn , ¶ 25.
¶52 Issue Four: Whether the Coveys made improper closing arguments regarding the Brishkas' alleged negligence .
¶53 When assessing the content of a closing argument, we will reverse a jury verdict only where (1) improper argument occurred, and (2) the improper argument prejudiced a party such that it materially impaired the party's ability to receive a fair trial. Moralli v. Lake County , 255 Mont. 23, 32, 839 P.2d 1287, 1292-93 (1992) ; Harne v. Deadmond , 1998 MT 22, ¶¶ 5, 11, 287 Mont. 255, 954 P.3d 732.
¶54 A closing argument may be improper where counsel references evidence not admitted in the record or puts on a physical demonstration that constitutes introduction of new evidence. See Rieger v. Coldwell , 254 Mont. 507, 510, 839 P.2d 1257, 1258-59 (1992). Conversely, counsel may comment on properly admitted evidence during closing argument, and the jury may make inferences from such evidence. Moralli , 255 Mont. at 32, 839 P.2d at 1293.
¶55 At the close of evidence, the District Court ruled it would permit the strict liability claim to go to the jury. The Coveys then withdrew their negligence, nuisance, and trespass claims against the Brishkas. During closing argument, the Coveys acknowledged that questions of whether the outlet culvert was working or maintained, and whether or not there was or should have been a spillway were no longer before the jury. The Coveys then went on to impugn Alexander Brishka's credibility as a witness by attacking his testimony regarding his recollection of the blocked outlet culvert and berm. The Brishkas objected, and the Coveys responded, "there no limitation on what [members of the jury] can consider in their deliberations." The District Court overruled the objection.
***380 ¶56 The Brishkas argue the District Court erred by allowing the Coveys in closing arguments to address the Brishkas' alleged negligence, which was no longer an issue in the case. The Brishkas argue the sole purpose of addressing their alleged negligence was to inflame the jury with irrelevant information, and that the Coveys' reference to the now-irrelevant evidence prejudiced the Brishkas. The Coveys respond that the District Court did not abuse its discretion when it allowed the Coveys to make closing arguments based on admissible evidence. We agree.
¶57 Once evidence is admitted, a trial cannot be reverse-engineered. See Moralli , 255 Mont. at 32, 839 P.2d at 1292-93. Even if evidence admitted was only relevant to claims that ultimately were not submitted to the jury, if that evidence was properly admitted, counsel may comment on that evidence during closing. See Moralli , 255 Mont. at 32, 839 P.2d at 1293 ; see also State v. Gladue , 1999 MT 1, ¶ 15, 293 Mont. 1, 972 P.2d 827 ("it is proper for a prosecutor [in closing arguments] to comment on conflicts and contradictions in testimony, as well as to comment on the evidence presented and suggest to the jury inferences which may be drawn...."). However, unnecessary argument or improper comments regarding properly admitted evidence remain objectionable and inappropriate. See State v. Stewart , 253 Mont. 475, 482-83, 833 P.2d 1085, 1089-90 (1992).
*798 ¶58 Although the negligence claim was not submitted to the jury, the evidence admitted in support of this charge was nevertheless properly before the jury. The Coveys' counsel commented on the evidence in closing for the limited purpose of impugning Alexander Brishka's credibility as a witness and not as it pertained to a charge no longer before the jury. Accordingly, no improper argument occurred. See Moralli , 255 Mont. at 32, 839 P.2d at 1292-93 ; Rieger , 254 Mont. at 510, 839 P.2d at 1258-59. Because no improper argument occurred, we decline to analyze whether the Brishkas were prejudiced by the Coveys' closing arguments. The District Court was in the best position to assess whether the evidence was properly before the jury, see Evans , ¶ 26, and it did not abuse its discretion in overruling the Brishkas' objections, see Ward , ¶ 9
¶59 Issue Five: Whether the District Court erred when it excluded evidence of other causes of the pond breach.
¶60 Pursuant to M. R. Civ. P. 8(c), any matter " 'constituting an avoidance or affirmative defense' " must be pled, including evidence of a superseding intervening cause. Faulconbridge , ¶ 82. A "superseding intervening cause" is an unforeseeable event that occurs after a defendant's negligent act and will generally serve to cut off a ***381 defendant's liability. Faulconbridge , ¶ 81 (quoting Whiting v. State , 248 Mont. 207, 216, 810 P.2d 1177, 1183 (1991) ) (internal citations omitted). Foreseeable actions do not break the chain of causation. Faulconbridge , ¶ 85 (citing Cusenbary v. Mortensen , 1999 MT 221, ¶ 24, 296 Mont. 25, 987 P.2d 351 ("when an intervening cause is reasonably foreseeable, it does not absolve the defendant of liability....")).
¶61 Proximate cause is a necessary element of any plaintiff's recovery in a strict liability suit, and "a defendant's liability can be cut off by a superseding intervening force." Dvorak v. Matador Serv. Inc. , 223 Mont. 98, 106, 727 P.2d 1306, 1311 (1986). In direct cause cases, where no independent intervening forces are present, "proof of causation is satisfied by proof that the defendant's conduct was the cause in fact or actual cause of the damage alleged, and no consideration of the concept of foreseeability is required." Cusenbary , ¶ 28 (citing Busta v. Columbus Hosp. , 276 Mont. 342, 373, 916 P.2d 122, 140-41 (1996) ).
¶62 A defendant may introduce non-party conduct "only for the purpose of demonstrating that the non-party conduct was a superseding intervening cause of plaintiff's damages." Faulconbridge , ¶ 81 ; Larchick , ¶ 53. A defendant may not, however, introduce such non-party conduct "in an attempt to merely diminish [his] own responsibility, for this would constitute an attempt to apportion fault to a nonparty...." Faulconbridge , ¶ 81.
¶63 In the Brishkas' Answer and Jury Demand, filed August 31, 2017, they affirmatively pled that the Coveys' alleged damages "were caused or contributed to by persons or entities for whose actions [the Brishkas] are not legally responsible." This defense was again stated in the Brishkas' Answer to Amended Complaint and Jury Demand, filed September 18, 2017. At trial, the District Court excluded testimony about the increase in drainage into the pond due to DOT road construction, concluding such evidence "squarely place[d] responsibility on [DOT]...." The District Court limited the Brishkas' expert testimony to: describing the outflow culvert, generally; the structural integrity of the pond redesign; methods for measuring flow rates; current rates; and types of precipitation and increased flow to the pond due to the storm. The District Court disallowed testimony about who installed, maintained, or was responsible for the culvert.
¶64 The Brishkas argue the District Court erred when it precluded them from referencing, alluding to, mentioning, or implying that any changes in circumstances or other factors that contributed to the pond failure-aside from those alleged by the Coveys-may have caused or ***382 contributed to the pond failure. The Brishkas argue they affirmatively pled that other persons or entities caused the Coveys' damages. The Brishkas argue they should have been permitted to introduce evidence that DOT's alteration to Big Mountain *799 Road increased drainage into their pond by 389 percent. The Brishkas argue the District Court erred by failing to recognize the distinction between the presentation of evidence to rebut causation and the apportionment of liability to nonparties under § 27-1-703, MCA.
¶65 The Coveys respond that the Brishkas waived these arguments by failing to include them in the pretrial orders and in jury instructions. The Coveys further respond that the District Court did not abuse its discretion when it excluded evidence of intervening and superseding causes because the Brishkas did not properly raise such theories as an affirmative defense and failed to properly disclose their experts.
¶66 It was well within the District Court's discretion to limit the scope of expert testimony based on a failure to disclose expert testimony. First Citizens Bank v. Sullivan , 2008 MT 428, ¶ 29, 347 Mont. 452, 200 P.3d 39 ; Nelson v. Nelson , 2005 MT 263, ¶¶ 31-32, 329 Mont. 85, 122 P.3d 1196. The District Court concluded that the Brishkas failed to disclose any expert to testify regarding the impact of the DOT construction until the Brishkas filed their rebuttal expert disclosure. The District Court did not abuse its discretion when it limited the scope of expert testimony to what the Brishkas included in their initial expert disclosure and granted the Coveys' Motion in Limine . See Nelson , ¶¶ 31-32, 34.
¶67 The Brishkas did not offer any jury instructions regarding superseding intervening causes and did not object to the proposed (and given) instructions regarding causation; the Brishkas cannot now claim they were harmed by the causation instructions. See Drilcon, Inc. v. Roil Energy Corp. , 230 Mont. 166, 174, 749 P.2d 1058, 1062 (1988) (a defendant's "failure to offer an instruction regarding superseding/intervening cause renders any alleged error harmless....").
¶68 We conclude the District Court did not err when it excluded evidence at trial that DOT was potentially at fault for the Coveys' damages. See Larchick , ¶¶ 52-53.
CONCLUSION
¶69 The District Court did not err when it concluded the Brishkas' pond constituted an abnormally dangerous condition that warranted the application of strict liability. The District Court also did not err when it allowed the Coveys to claim the full amount of damages for the increased cost of their shared driveway project. Regardless of whether ***383 the Coveys improperly presented evidence of the diminution of property value, the jury verdict form, unobjected to by either party, did not separate out damages, was supported by substantial evidence, and did not amount to reversible error. Additionally, the District Court did not err in allowing the Coveys to make arguments in closing that touched upon properly-admitted evidence. Finally, the District Court did not abuse its discretion when it refused to allow evidence of other potential causes of the pond breach. We affirm.
We Concur:
INGRID GUSTAFSON, J.
DIRK M. SANDEFUR, J.
BETH BAKER, J.
JIM RICE, J.

A "swale" is a shallow depression or trench in the land through which water can flow. Ducham v. Tuma , 265 Mont. 436, 438, 877 P.2d 1002, 1004 (1994).

The Coveys' conclusion is presumably premised on the visible notations in the margins of the verdict form. However, the verdict form did not differentiate between diminution damages/general property damage and increased driveway construction costs, and neither did the notations.